JUDGE LIMAN

26 CV 05654

# EXHIBIT A

C-1259

# Microsoft Content License Agreement

This Content License Agreement (*"Agreement"*) is between Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 (*"Microsoft"*), and STATS LLC, a company with its principal place of business at 2775 Shermer Road, Northbrook, IL 60062 (*"Licensor"*). This Agreement will be effective as of the later of the two signature dates below (*"Effective Date"*).

This Agreement consists of the Terms and Conditions below and any Exhibits to the Agreement (each, an *"Exhibit"*).

**Addresses and contacts for notices**

| Microsoft | Licensor |
|---|---|
| Attention: Virl Hill | Attention: Gary Walrath |
| Address: One Microsoft Way, Redmond, WA 98052 | Address: 2775 Shermer Road, Northbrook, IL 60062 |
| Phone Number: | Phone Number: (847) 583-2100 |
| Fax Number: 425.936.7329 | Fax Number: (847) 583-2650 |
| Email: | Email: gwalrath@stats.com |
| With a copy to, at the same address: Microsoft Legal and Corporate Affairs, Online Services LCA | Other contact address: With a copy to, at the same mailing address: Legal Department (email: LegalDepartment@stats.com) |

**Agreed and accepted**

| Microsoft | | Licensor |
|---|---|---|
| Signature: | Microsoft Online, Inc. [signature] | Signature: [signature] |
| Name: | Terri Beidle | Name: Gary Walrath |
| Title: | Contract Execution (MOI) | Title: CEO |
| Date: | 5/15/2014 | Date: 13 May 2014 |

## TERMS AND CONDITIONS

1. DEFINITIONS. Defined terms are set forth in Exhibit A, attached hereto. Other capitalized terms used, but not defined in Exhibit A, have the meaning attributed to them elsewhere in this Agreement and in any Exhibits to this Agreement.

2. LICENSES

2.1. Grant. Licensor grants Microsoft a non-exclusive, worldwide, non-transferable, fully paid-up license during the Term (subject to the timelines set forth in Exhibit B) to:

2.1.1. Reproduce, use, copy, integrate, publicly perform, merge, append, aggregate, publish, display, edit (for formatting purposes, length and/or clarity), modify (for formatting purposes, length and/or clarity) and transmit the Licensed Content within Microsoft Offerings for editorial and news/information-related (including search) purposes. The Licensed Content may be temporarily cached by Users for offline viewing. Notwithstanding anything herein to the contrary, Microsoft shall ensure than any edits or modifications do not alter the meaning of the Licensed Materials or render them inaccurate or misleading, and Microsoft shall at all times remain responsible for any edits or modifications made by it to the Licensed Materials.

2.1.2. Subject to Exhibit D, publish headlines, 10-50 word excerpts or summaries (provided that they do not change the editorial meaning or intent of the source content), and image thumbnails from Licensed Content on the Microsoft Offering.

2.1.3. Translate and have translated the Licensed Content (provided the translations are reasonably accurate and do not substantively modify the underlying meaning of the Licensed Content) and display such translations within the Microsoft Offerings for editorial and news/information-related (including search) purposes.

2.1.4. Access the AP Graphics Bank Content, solely for purposes of displaying such graphics within the Microsoft Offerings for news purposes to end users, but STATS conveys no trademark or other commercial rights in respect of the AP Graphics Bank Content or the contents thereof.

2.1.5. Use the Licensed Content, as such Licensed Content appears in the Microsoft Offering pursuant to the license rights in this Agreement, to demonstrate and promote the Microsoft Offering. Such demonstrations may include industry events, presentations, advertising "upfronts", and on Microsoft's corporate web sites. Microsoft will not use the Licensed Content in a negative, obscene, libelous or defamatory manner, or in a manner as to create the appearance of sponsorship, endorsement or affiliation between Licensor and Microsoft. Notwithstanding the foregoing, Microsoft shall be solely responsible for any third party licenses as may be necessary in connection with the usage set forth in this section 2.1.5.

6. Sublicense the foregoing rights to the Licensed Content to Microsoft Affiliates solely for the purpose of operationalizing this Agreement. Microsoft shall ensure that any such Microsoft Affiliates are aware of the relevant terms and conditions in this Agreement with respect to the Licensed Content, and shall remain responsible at all times for any breach of this Agreement by any such Microsoft Affiliate.

2.2. **Reservation.** As between the parties and subject to the licenses in this Agreement, Licensor owns all rights in the Licensed Content and Microsoft owns all rights in the Microsoft Offering and any software, tools, content, materials, specifications, guidelines and instructions provided by Microsoft to Licensor to include in or create the Licensed Content or otherwise fulfill Licensor's obligations under this Agreement. Each party reserves all rights not expressly granted or waived in this Agreement.

2.3. **Existing Agreements.** Licensor and Microsoft have previously entered into the following agreements related to the Licensed Content: (a) License Agreement dated 25th day of April, 2012 between STATS Inc and Microsoft Corporation (the "***AppEx Agreement***") and any subsequent amendments; (b) License Agreement dated 31st day of May, 2013 between STATS LLC and Microsoft Corporation (the "***Bing Agreement***") and any subsequent amendments; (c) License Agreement dated 6th September, 2012 between STATS LLC and Microsoft Corporation (the "***TMX Agreement***") and any subsequent amendments (collectively, the "***Existing Agreements***"). The parties agree that the AppEx Agreement and the Bing Agreement shall be superseded and deemed terminated by this Agreement as of the Commercial Availability Date. The parties further agree that term of the TMX Agreement shall be extended until the Commercial Availability Date, and shall then automatically terminate. The parties agree that all fees and payment terms set forth in the Bing Agreement and the AppEx Agreement shall remain in effect through the Commercial Availability Date, and that the monthly fee set forth in the TMX Agreement shall be extended (pro rata) though the Commercial Availability Date, at which time the Existing Agreements shall be deemed terminated, and all fee obligations therein shall immediately cease and be replaced by the fees and payment terms set forth herein.

2.4. **Content/League-Specific Requirements.** Microsoft will comply with content- and/or league-specific requirements as set forth in Exhibit D.

2.5. **Trademark License.**

2.5.1. **Licensor Marks.** Licensor hereby grants to Microsoft a non-exclusive, worldwide license to use the Licensor Marks in connection with the reproduction, distribution and display of the Licensed Content within the Service. Microsoft acknowledges Licensor's ownership of the Licensor Marks and agrees that any use thereof shall inure to Licensor's benefit; that the use thereof shall conform to standards and specifications initially or presently approved by Licensor; and to cooperate with Licensor in facilitating Licensor's control of such usage by supplying to Licensor as Licensor shall reasonably request, no more than quarterly, specimens of such usage. Licensor shall notify Microsoft of any failure by Microsoft to conform such usage to the standards set forth herein, and Microsoft shall have thirty (30) days from receipt of such notice to cure such failure to Licensor's approval, such approval not to be unreasonably withheld. If Licensor is not satisfied that such failure has been timely cured, and/or upon termination or expiration of this Agreement, Microsoft shall cease all use of the Licensor Marks.

2.5.2. **AP Name and Trademarks.** Licensor hereby grants to Microsoft a non-exclusive, worldwide license to use The Associated Press ("*AP*")'s name and logo in connection with the AP-attributed photographic portions of the Licensed Content within the Service. Microsoft acknowledges AP's ownership of AP's name and logo and agrees that any use thereof in connection with the AP-attributed photographic portions of the Licensed Materials shall inure to AP's benefit; that the use thereof in connection with the AP-attributed photographic portions of the Licensed Materials shall conform to

standards and specifications initially or presently approved by Licensor; and to cooperate with Licensor in facilitating Licensor's control of such usage by supplying to Licensor as Licensor shall reasonably request, no more than quarterly, specimens of such usage. Licensor shall notify Microsoft of any failure by Microsoft to conform such usage to the standards set forth herein, and Microsoft shall have thirty (30) days from receipt of such notice to cure such failure to Licensor's approval, such approval not to be unreasonably withheld. If Licensor does not approve that such failure has been timely cured, and/or upon termination or expiration of this license, Microsoft shall cease all use of AP's name, logo and trademarks.

2.5.3. **Microsoft Marks.** Microsoft hereby grants to Licensor a non-exclusive worldwide license to use the Microsoft Marks in connection with Licensor's ordinary course of promotional, marketing and press release activities. Licensor acknowledges Microsoft's ownership of the Microsoft Marks and agrees that any use thereof under this Agreement shall inure to Microsoft's benefit; that the use thereof in connection with this Agreement shall conform to standards and specifications initially or presently approved by Microsoft, and to cooperate with Microsoft in facilitating Microsoft's control of such usage by supplying to Microsoft, as Microsoft shall reasonable request, no more than quarterly specimens of such usage. Microsoft shall notify Licensor of any failure by Licensor to conform such usage to the standards set forth herein, and Licensor shall have thirty (30) days from receipt of such notice to cure such failure to Microsoft's approval, such approval not to be unreasonably withheld. If Microsoft does not approve that such failure has been timely cured and/or upon termination or expiration of this license, Licensor shall cease all use of the Microsoft Marks.

3. MARKETING; SALES

3.1. **Distribution.** Subject to the terms of this Agreement, Microsoft may set and determine (a) the terms of use or licensing of the Microsoft Offering (and any content contained in it, provided that any terms of use or licensing with respect to the Licensed Content must be in compliance with this Agreement); (b) any other Microsoft Offering circumstances of distribution including levels of effort, position, distribution channels, name, rights granted to Users, pricing, promotion, marketing, advertising, and when to cease sales and support; and (c) any other strategic sales or marketing decisions for the Microsoft Offering.

3.2. **Attribution.**

3.2.1. <u>Copyright</u>

(i) Subject to reasonable space restrictions, Microsoft agrees to display the following copyright notice in connection with all uses of the statistical portions of the Licensed Content: "STATS LLC ©xxxx [where xxxx denotes the current year]."

(ii) With respect to AP-attributed Articles, subject to reasonable space restrictions, Microsoft agrees to display the following copyright notice: "Copyright xxxx [where xxxx denotes the current year] by Associated Press and STATS LLC. Any commercial use or distribution without the express written consent of Associated Press or STATS LLC is strictly prohibited."

(iii) With respect to Getty-attributed photographs, subject to reasonable space restrictions, Microsoft agrees to display the following copyright notice: "©xxxx [where xxxx denotes the current year] Getty Images."

(iv) With respect to AP-attributed photographs, subject to reasonable space restrictions, Microsoft agrees to display the following copyright notice: "©xxxx [where xxxx denotes the current year] by Associated Press."

(v) With respect to PA-attributed photographs, subject to reasonable space restrictions, Microsoft agrees to display the following copyright notice: "©xxxx [where xxxx denotes the current year] by PA."

3.2.2. Credits. Subject to reasonable space restrictions, Microsoft shall also display the credit or attribution provided by Licensor with respect to the portions of the Licensed Content-Headshots used within the Service, which will be substantially in the form of:

(i) For Articles: [Writer's byline], STATS Writer; [Writer's byline], Associated Press Writer; or (AP) or By The Associated Press, [Writer's byline].

(ii) For Getty-attributed photographs: Photo by [Photographer's byline]/ via Getty Images; or Photo by [Photographer's byline]/Getty Images.

(iii) For AP-attributed photographs: Visual representation of "AP" logo on picture or immediately below adding AP Photo/[Photographer's byline].

(iv) For PA-attributed photographs: Photo by [Photographer's byline]/ via PA; or Photo by [Photographer's byline]/PA.

4. NON-EXCLUSIVE; INDEPENDENT DEVELOPMENT

4.1. **Non-Exclusive.** Except for any exclusive licenses granted to Microsoft in an Exhibit, this Agreement is non-exclusive. This Agreement does not restrict Licensor from licensing the Licensed Content (or any portion thereof) to any other parties. This Agreement does not restrict Microsoft from:

4.1.1. Providing, for any Microsoft Offering, any third-party technology, data, information, content, product, or service;

4.1.2. Acquiring, licensing, developing, manufacturing, or distributing technology, data, information, content, products, or services similar to any Licensed Content (or any other materials made available by Licensor under this Agreement);

4.1.3. Marketing, promoting, or distributing such similar technology, data, information, content, products, or services instead of or in addition to any Licensed Content; or

4.1.4. Having any of the foregoing done for Microsoft by a third party.

4.2. **Distribution Obligations.** Except as set forth in this Agreement or any Exhibit, this Agreement does not require Microsoft to distribute, use, include, or enable access to any Licensed Content. Microsoft may add, remove, disable, or cease using any Licensed Content at any time.

5. PAYMENT

5.1. **Payment.** Payment obligations between the parties for the Licensed Content are set forth in Exhibit B. Unless otherwise stated, all amounts are in US dollars.

5.2. **Invoices / Manner of payment.** Licensor will invoice Microsoft under Microsoft's invoice policies for amounts owed under the Agreement. Except as otherwise provided in any Exhibit, after Licensor has been accepted into the Microsoft vendor system, Licensor will invoice Microsoft using Microsoft's online tool, according to the then-current requirements at https://einvoice.microsoft.com. Microsoft will invoice Licensor for amounts owed under

mutually agreed invoicing requirements. Each party will include line-item detail for each charge to the other party. Upon receipt of a correct and undisputed invoice, the owing party will pay all undisputed portions of the other party's invoices in arrears on a basis of net 60 days, without any discount if such payment is rendered early. All invoiced amounts will be expressed and payable in USD. Each party may choose to waive the invoice requirements of the other party.

5.3. **Costs.** Except as otherwise noted in Section 2.1.5, Licensor will obtain all rights and pay any third party fees necessary for Microsoft's use of the Licensed Content as authorized by this Agreement (e.g., third party statistical data, talent fees, residual payments). Each party will pay its own costs to perform unless the Agreement provides otherwise.

5.4. **Taxes.** The parties are not liable for any of the taxes of the other party that the other party is legally obligated to pay and which are incurred or arise in connection with or related to the transactions contemplated under this Agreement, and all such taxes (including but not limited to net income or gross receipts taxes, franchise taxes, property taxes, and/or taxes arising from sales between a party and its subscribers or customers) shall be the financial responsibility of the party who is obligated by operation of law to pay such tax. Each party shall pay to the other party any sales, use or value added taxes that are owed by that party solely as a result of entering into this Agreement and which are required to be collected under applicable law. A party may provide to the other party a valid exemption certificate in which case that other party shall not collect the taxes covered by such certificate. Each party agrees to indemnify, defend and hold the other party harmless from any taxes (including sales or use taxes paid by one party to other) or claims, causes of action, costs (including, without limitation, reasonable attorneys' fees) and any other liabilities of any nature whatsoever related to a party's taxes. If any taxes are required to be withheld on payments made by one party to the other, the paying party will deduct such taxes from the amount otherwise owed and pay them to the appropriate taxing authority. The paying party will secure and deliver to the other party an official receipt for those withholdings and other documents reasonably requested by the other party in order to claim a foreign tax credit or refund. The parties will use reasonable efforts to ensure that any taxes withheld are minimized to the extent possible under applicable law.

6. TERM AND TERMINATION

6.1 **Term.** This Agreement will commence as of the Effective Date and will continue for a period of 3 years starting from the Commercial Availability Date (the *"Initial Term"*), renewing thereafter for up to two consecutive 1-year periods (each, a *"Renewal Term"*), unless Microsoft gives notice of its intent not to autorenew the agreement no later than 60 days prior to the end of the Initial Term or the then-current Renewal Term, and further subject to the termination rights in Section 6.2. . The Initial Term and any Renewal Term will collectively be the *"Term."* The period beginning on the Effective date and continuing for one year after the Commercial Availability Date shall be *"Year 1,"* the year following shall be *"Year 2,"* the year following shall be *"Year 3"* and so on.

6.2. **Termination.** This Agreement may be terminated as follows:

6.2.1. By Either Party. Either party may suspend its performance or terminate this Agreement:

(a) If the other party materially breaches this Agreement (other than the confidentiality obligations in Section 7) and fails to cure that breach within 30 days after receiving notice;

(b) Immediately if the other party materially breaches the confidentiality obligations in Section 7;

(c) If one party is unable to perform its obligations for more than 90 days due to an event of force majeure. In such event, the performing party may terminate this Agreement immediately upon written notice to the non-performing party following such 90 day period; or

(d) Immediately if the other party is insolvent. "*Insolvent*" means: (i) becoming insolvent; (ii) admitting in writing the inability to pay debts as they mature; making a general assignment for the benefit of creditors; (iii) suffering or permitting the appointment of a trustee or receiver for all or any assets (unless such appointment is vacated or dismissed within 60 days after appointment); (iv) filing (or having filed) any petition as a debtor under any provision of the federal Bankruptcy Code or any state law relating to insolvency, unless such petition and all related proceedings are dismissed within 60 days of such filing; being adjudicated insolvent or bankrupt; (v) having wound up or liquidated; or (vi) ceasing to carry on business.

6.2.2. By Licensor. Licensor may also terminate this Agreement:

(i) Upon written notice to Microsoft, in the event of any Unauthorized Use of the Licensed Content, if Microsoft has not begun remediation of the Unauthorized Use within seven (7) days of written notice from Licensor and the Unauthorized Use does not cease within fourteen (14) days of such written notice from Licensor; and

(ii) Upon twenty one (21) days' notice following the failure of Microsoft to make any payment hereunder when due and such payment is not made during said twenty one (21)-day period.

6.2.3. By Microsoft.

(i) With effect at any time on or after the completion of Year 1, Microsoft shall have the right to terminate this Agreement (the "**Early Termination Option**") provided Microsoft: (a) is not in breach of this Agreement or no event has occurred that would constitute a breach of the Agreement, and (b) provides at least ninety (90) days written notice (which notice may be given prior to the first anniversary of the Commercial Availability Date) to Licensor of Microsoft's desire to terminate (an "**Early Termination Notice**") and (c) pays to Licensor a fee (the "**Early Termination Fee**") as follows:

| When Exercised | Termination Fee Owed |
|---|---|
| During Year 1 (to take effect no earlier than first anniversary of the Commercial Availability Date) | $[redacted] |
| During Year 2 | Lesser of (i) [redacted] % of the unpaid portion of the Annual Fee for Year 2, or (ii) $[redacted] |
| During Year 3 | Lesser of (i) [redacted] % of the unpaid portion of the Annual Fee for Year 3, or (ii) $[redacted] |
| During Year 4 or 5 | Lesser of (i) [redacted] % of the unpaid portion of the Annual Fee for Year 4 or 5 (as applicable), or (ii) $[redacted] |

In the event that Microsoft properly exercises such Early Termination Option, this Agreement shall terminate at 11:59pm prevailing Eastern Time upon the ninetieth (90th) day following STATS' receipt of the Early Termination Notice (each an **"Early Termination Date"**), provided that such Early Termination Date shall not occur prior to the first anniversary of the Commercial Availability Date. For the avoidance of doubt, during the period of time after Licensor's receipt of an Early Termination Notice and continuing through such Early Termination Date, Microsoft shall continue to pay the license fees to Licensor, and Licensor shall continue to deliver the Licensed Materials to Microsoft.

(ii) Microsoft may terminate this Agreement upon 90 days prior written notice to Licensor should Microsoft cease offering the service currently known as Prime Sports, provided that (1) such termination shall not be effective prior to the first anniversary of the Commercial Availability Date, and (2) the parties shall discuss in good faith terms for the continued licensing of content for other Microsoft platforms/properties, if any.

6.3. **Survival.** The following sections will survive the termination of this Agreement or an Exhibit for any reason: 1, 2.2, 5, 6.3, 6.4, 7-11, and 13. Licensor will ensure that the licenses granted to Microsoft in this Agreement will survive the transfer or assignment by Licensor of the Licensed Content to any other entity.

6.4. **Effects of termination.** In the event of the termination of this Agreement, for any reason, Microsoft shall not have any obligation to ensure that users have deleted any portions of the Licensed Materials which were cached during the Term. All rights and remedies under this Agreement are cumulative. Upon termination or expiration of this Agreement, each party will remain obligated to render any payments due under this Agreement to the other pursuant to Section 5 through the last day on which Licensed Content is exhibited on the Microsoft Offering. Fees to be pre-paid under any Exhibit will be pro-rated based on the effective date of termination either by the: (i) paying party prior to rendering its final payment; or (ii) receiving party by promptly refunding to the paying party any over-payment previously rendered. Microsoft may internally archive Licensed Content after termination solely for archival purposes or as otherwise required by law, but shall cease all public display of the Licensed Content as of the date of termination or expiration of this Agreement.

7. **CONFIDENTIALITY.**

The parties agree that during and after the Term they shall not, except for purposes of this Agreement, use for their own benefit or for the benefit of any person, firm, corporation or other entity, any secret or confidential information, solicitation methods, confidential pricing information or any other data pertaining to their respective businesses, or any affiliates thereof, their respective financial affairs or any other information obtained hereunder regarding each other not generally known within their respective trades, or as a matter of public knowledge or patent, trademark, trade name, service mark, copyright or other intellectual property of the other (collectively, the **"Confidential Information"**) except as authorized by this Agreement. Licensee agrees that it shall take reasonable steps to ensure that its employees and agents do not communicate, grant, disburse or transmit in any way whatsoever to any third party or parties the Licensed Materials or the Confidential Information without the prior written consent of Company, except as explicitly permitted pursuant to this Agreement. The confidentiality

obligations of this Paragraph 7 will endure for five (5) years after the Term except for trade secrets, confidentiality obligations of which will endure for the lifetime of the trade secret.

8. REPRESENTATIONS AND WARRANTIES

8.1 Microsoft represents, warrants, and covenants that it has full power and all necessary rights to enter into this Agreement.

8.2 Licensor represents, warrants, and covenants that:

8.2.1. Licensor has full power and all rights to grant the licenses in this Agreement;

8.2.2. Licensor owns the Licensed Content or has licensed it from third parties with rights sufficient to grant Microsoft the licenses in this Agreement (without any payment by Microsoft to any third party and without the need for Microsoft to clear or obtain any additional rights to exercise these licenses, except as otherwise noted in this Agreement);

8.2.3. The Licensed Content and Microsoft's exercise of the licenses set forth herein do not and will not violate any third party intellectual property rights (including copyright, patent, trade secret, trademark), or other third party proprietary, privacy, personal or publicity right; provided, however, that the foregoing warranty will not apply to any Licensed Content that is edited or modified by Microsoft after delivery by Licensor (to the extent the unedited or unmodified Licensed Content itself is not violative), or to any use of the Licensed Content which was not authorized by this Agreement, or to the extent that the alleged violation relates to a Microsoft Offering(s) itself;

8.2.4. It will use its best efforts to ensure that the Licensed Content (and any information contained in it) is not misleading, false, libelous, defamatory, obscene, unlawful, or injurious to any third party;

8.2.5. The Licensed Content is not, and will not be, in whole or in part, governed by an Excluded License. "*Excluded License*" means a license for the Licensed Content and any other software or content combined or distributed to Microsoft with the Licensed Content, where the license includes terms providing that (a) the licensee of the software is authorized to make modifications to, or derivative works of, the source code for the software, and (b) the licensee is authorized to distribute such modifications or derivative works of the software only if subsequent licensees are authorized to modify or make further derivative works of licensee's modifications or derivative works. Excluded Licenses include, but are not limited to, any version of the GNU General Public License, Lesser/Library GPL, Mozilla Public License, Common Public License, or Affero GPL; and

8.2.6. The Licensed Content will be as current, accurate and complete as may be reasonably achieved using the source data, compilation and data processing methods normally employed by Licensor in the ordinary course of its business.

8.3 **Disclaimer.** EXCEPT AS PROVIDED HEREIN, EACH PARTY EXPRESSLY DISCLAIMS ALL OTHER EXPRESS, IMPLIED OR STATUTORY WARRANTIES. THIS INCLUDES THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.

9. INDEMNIFICATION

9.1 Each party will defend, indemnify and hold the other party, including its subsidiaries, Licensor Affiliates or Microsoft Affiliates (as applicable), agents, and licensees (collectively the

"***Indemnified Parties***") harmless from all expenses (including all judgments, settlements, attorneys' fees, and costs) related to any Claim brought against the other party. "***Claim***" means any third-party allegation against the Indemnified Party which arises out of or is related to the indemnifying party's negligent or willful misconduct or the indemnifying party's breach of any representation, warranty, duty or obligation in this Agreement. The Indemnified Party will:

9.1.1. Promptly notify the indemnifying party of any Claim;

9.1.2. Permit the indemnifying party (through counsel selected by the indemnifying party) to answer and defend; and

9.1.3. Provide non-confidential information and assistance, at the indemnifying party's expense and request, as needed to defend the Claim. The Indemnified Party may, at its expense and with separate counsel, monitor or participate in the defense. The indemnifying party will not be responsible for any settlement made by the Indemnified Party without its consent. The indemnifying party may not settle or publicize any Claim without the Indemnified Party's consent.

9.2 **Duty to correct Licensed Content.** If the Licensed Content (or any part of it) is held to be an infringement and the use of the Licensed Content, as authorized by this Agreement, is enjoined or is threatened to be enjoined, Licensor will notify Microsoft and immediately, at Licensor's expense:

9.2.1. Procure for Microsoft the right to continue use of all Licensed Content as licensed under this Agreement; or

9.2.2. Replace or modify the applicable Licensed Content with a version of the Licensed Content that is non-infringing and that meets the Specifications in the applicable Exhibit to Microsoft's satisfaction.

**10. Excluded damages**

TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES ARISING OUT OF OR THAT RELATE IN ANY WAY TO THIS AGREEMENT OR ITS PERFORMANCE. THIS EXCLUSION WILL APPLY REGARDLESS OF THE LEGAL THEORY UPON WHICH ANY CLAIM FOR SUCH DAMAGES IS BASED, WHETHER THE PARTIES HAD BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER SUCH DAMAGES WERE REASONABLY FORESEEABLE, OR WHETHER APPLICATION OF THE EXCLUSION CAUSES ANY REMEDY TO FAIL OF ITS ESSENTIAL PURPOSE. THIS EXCLUSION WILL NOT APPLY TO EITHER PARTY'S LIABILITY FOR BREACH OF ITS CONFIDENTIALITY OBLIGATIONS OR OBLIGATIONS UNDER SECTION 9 (INDEMNIFICATION) OR VIOLATION OF THE OTHER PARTY'S INTELLECTUAL PROPERTY RIGHTS.

**11. Equitable Remedies**

In the event of any breach of the provisions of Section 7, the parties hereto agree that remedies at law will not be adequate and each shall be entitled, in addition to damages, to preliminary and permanent injunctive relief (without the necessity of posting of bond) to prevent a then occurring or an about to occur breach, as well as an equitable accounting of all profits or benefits arising out of such breach, which rights and remedies shall be cumulative and in addition to any other rights or remedies to which the parties may be entitled.

**12. Publicity**

Within thirty (30) days after the Commercial Availability Date, the parties may separately or mutually issue a press release containing language agreed upon by the parties announcing that the parties have entered into a business relationship as contemplated herein. Prior to that date, Licensor will not communicate with the press or public regarding any aspect of this Agreement, or the parties' relationship under it, without Microsoft's prior written consent.

13. MISCELLANEOUS

13.1. **Notices.** Notices may be provided either by electronic or physical mail. The person(s) identified on the first page of this Agreement will receive notices on behalf of their respective company. Either party may change the person to whom notices will be sent by giving notice to the other.

13.2. **Jurisdiction and governing law.** The laws of the State of New York govern this Agreement without regard to conflict of law provisions. If federal jurisdiction exists, the parties consent to exclusive jurisdiction and venue in the federal courts in the Borough of Manhattan, New York City, New York. If not, the parties consent to exclusive jurisdiction and venue in the Borough of Manhattan, New York City, New York. The provisions of the 1980 U.N. Convention on Contracts for the International Sale of Goods do not apply.

13.3. **Attorneys' fees.** If either Microsoft or Licensor employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees, costs, and other expenses, including the costs and fees incurred on appeal or in a bankruptcy or similar action.

13.4. **Compliance with law.** When performing this Agreement, each party will comply, at its own expense, with all applicable laws, regulations, and ordinances.

13.5. **Assignment.** Microsoft may assign this Agreement to a Microsoft Affiliate and Licensor may assign to a Licensor Affiliate. If either party assigns this Agreement, it must notify the other in writing as soon as commercially practicable following the assignment date. Any other assignment requires prior written approval of the other party.

13.6. **Waiver.** A party's delay or failure to exercise any right or remedy will not result in a waiver of that or any other right or remedy.

13.7. **Severability.** If any court of competent jurisdiction determines that any provision of this Agreement is illegal, invalid or unenforceable, the remaining provisions will remain in full force and effect.

13.8. **Force majeure.** Neither party will be liable for failure to perform any obligation under this Agreement to the extent such failure is caused by a force majeure event. (This includes acts of God, natural disasters, war, civil disturbance, action by governmental entity, strike and other causes beyond the party's reasonable control.) The party affected by the force majeure event will provide notice to the other party within a commercially reasonable time and will use its best efforts to resume performance. Obligations not performed due to a force majeure event will be performed as soon as reasonably possible when the force majeure event concludes.

13.9. **Affiliate and third party acknowledgement.** Microsoft and Licensor will remain obligated under this Agreement even if they cause their respective Licensor Affiliates or Microsoft Affiliates (as applicable), or designated third parties, to perform some or all of their obligations hereunder.

13.10. **Integration and modification.** This Agreement (including any Exhibits) is the entire agreement between the parties regarding its subject matter. This Agreement replaces all prior agreements, communications and representations between the parties regarding its subject matter

(including, as of the Commercial Availability Date, the AppEx Agreement, the Bing Agreement and the TMX Agreement). This Agreement does not impact in any way the use of data or content that Microsoft acquires outside of this Agreement. This Agreement can be changed only by an amendment signed after the Effective Date by authorized representatives of both parties.

**13.11. Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one instrument. This Agreement may be executed by facsimile (or other means of accurately transmitting an image), and neither party will contest the Agreement's validity solely because a signature was faxed or transmitted electronically. Each party will deliver to the other an original executed copy of the Agreement promptly after execution.

**13.12. Relationship of parties.** The parties are independent contractors and have no authority to act on behalf of or bind the other. This Agreement does not create an employment, agency or partnership relationship or grant a franchise.

**13.13. Other.** All rights and remedies under this Agreement are cumulative. All referenced Exhibits are deemed incorporated in this Agreement.

*[The remainder of this page intentionally left blank]*

**Exhibit A - Definitions**

1. "***AP Graphics Bank Content***" means the database of graphics compiled and maintained by The Associated Press. The content for which Licensee is being granted access pursuant to this Agreement is described in Exhibit B-1, attached hereto.

2. "***App Article Section***" means a section of a Microsoft App that primarily displays one Article or Video in its entirety and is not accessed by a User through the Licensor Pano (e.g., accessed by a User from an App Headline Section or a Microsoft search service);

3. "***App Headline Section***" means a section of a Microsoft App that displays titles, snippets, and image thumbnails from Licensed Content and third party content but does not display one piece of Licensed Content in its entirety (e.g., the Bing News app's initial screen called the "Bing Daily" which shows news story snippets, photos, and titles from multiple content providers);

"***Article***" means a discrete text piece of Licensed Content along with its related multimedia assets (e.g., slide shows and videos) that are identified in the Feed as associated with that item of Licensed Content;

5. "***CAP***" means Microsoft's "Creative Acceptance Policy" (as of the Effective Date at http://advertising.microsoft.com/creative-acceptance-policy);

6. "***Change of Control***" means any transaction or series of transactions with respect to a party (including, without limitation, any such transaction(s) in bankruptcy) in which, either: (a) a person or group of related persons who do not control such party prior to such transaction or series of transactions, subsequently obtain(s) control of such party by any means, whether by operation of law, acquisition of securities, merger, contract, acquisition of assets, or otherwise; or (b) such party acquires another person by operation of law, merger, acquisition of assets or otherwise and is not the surviving person. For purposes of this definition a Change of Control does not include a firm-commitment underwritten public offering of common stock, on the New York Stock Exchange or the NASDAQ Stock Market, pursuant to an effective registration statement under the Securities Act of 1933, as amended;

"***Commercial Availability Date***" means the earlier of (a) January 1, 2015, or (b) the date Microsoft first makes the Licensed Content available to Users through the Prime Sports offering, excluding if Microsoft makes the Licensed Content available to a limited number of Users in a pre-release version of such Microsoft Offering released for testing purposes;

"***Licensed Content***" means the items licensed to Microsoft under this Agreement (including, as applicable, the Licensor Marks, and Licensor ads), as set forth in Schedules 1, 2, 3, 4, and 5 to Exhibit B; for purposes of Sections 2.2, 2.3, 3.1, 4, 5.1, 6.2.2, 6.4 and 8.2.1 of the Agreement, the AP Graphics Bank Content shall be deemed to be Licensed Content;

9. "***Licensed Territory***" means the entire world, unless specific countries or territories are identified in an Exhibit;

10. "***Licensor Affiliate***" means any legal entity that Owns, is Owned by, or is commonly Owned with Licensor;

11. "***Licensor Marks***" means those product and service names, trade names, feature names, domain names, logos, and other trademarks of Licensor included in the relevant Exhibit;

12. "***Microsoft Affiliate***" means Microsoft Corporation and any legal entity that Microsoft Corporation directly or indirectly Owns, and any Microsoft Country Specific Affiliates;

13. *"Microsoft App"* means a software application developed, owned or operated by Microsoft or Microsoft Affiliates, and accessible via any internet-enabled devices on any Microsoft or third party software platform through any means of transmission now known or hereafter invented

14. *"Microsoft Country Specific Affiliate"* means any entity partially owned by Microsoft Corporation or a Microsoft Affiliate in any particular geography through which (i) Microsoft Corporation or a Microsoft Affiliate is conducting its primary business for any of the Microsoft Offerings in the applicable geography through such entity; (ii) such entity has not been set up to frustrate the purposes of the license limitations in this Agreement and (iii) either (a) Microsoft Corporation or a Microsoft Affiliate owns less than 50% of its equity interest due to regulatory requirements prohibiting 50% or more ownership or (b) in China only, Microsoft Corporation or a Microsoft Affiliate owns at least 45% of its equity interest; provided that such an entity is only an Microsoft Country Specific Affiliate to the extent that it is conducting the primary business of Microsoft Corporation or a Microsoft Affiliate, and/or the business of the Chinese entity which is the majority owner of such entity, but only when such Chinese entity is partnering with Microsoft Corporation or a Microsoft Affiliate;

15. *"Microsoft Marks"* means those product and service names, trade names, feature names, domain names, logos, and other trademarks of Microsoft that Microsoft may permit Licensor to use from time to time;

16. *"Microsoft Offering"* means, collectively, the products, web sites, applications, software, or services developed, owned or operated by Microsoft or Microsoft Affiliates, and accessible via any Internet-enabled device on any software platform, through any means of transmission now known or hereafter invented. At Microsoft's discretion, "Microsoft Offering" may also include: (a) any non-English language or co-branded version of the above offerings that are distributed either by Microsoft or a third party; (b) distributed or syndicated versions of Microsoft services rendered on or within third party web sites, applications, software or services; (c) a pay subscription service provided use of the Licensed Content on such service is made available to Users at no additional charge (e.g., Microsoft's proprietary online interactive entertainment service branded Xbox LIVE); provided, however, that Microsoft Offering will not include any sports action games where users control athletes' actions through a joystiq or similar input device, similar to the FIFA or Madden franchises from Electronic Arts, developed for the Xbox console; and (d) all Microsoft and Microsoft Affiliate current and future online search services in whatever form such online search services may take (provided that it is owned or branded by Microsoft), including standalone Microsoft (or Microsoft Affiliate, provided that such is owned or branded by Microsoft) search services, products, websites or applications for the search (or search-powered) experiences of a separate Microsoft -owned or branded (or Microsoft Affiliate, provided that such is Microsoft owned or branded) product, website or application (such product, website or application not necessarily used for online search); provided that, for subsections (a) through (d) above, any use in a product or service that is not owned by Microsoft will include Microsoft branding or co-branding;

17. *"Microsoft Website"* means websites and online services that are developed, owned or operated by Microsoft or Microsoft Affiliates, and accessible via any internet-enabled devices on any Microsoft or third party software platform through any means of transmission now known or hereafter invented;

18. *"Microsoft Website Article Section"* means a section of Microsoft Website that primarily displays one Article or Video in its entirety;

19. *"Owns"*, as used in this Exhibit A, means either having ownership of 50% or more of the entity, or the right to direct the management of the entity;

20. *"Prime Sports"* means the deep sports service that combines the Bing Sports applications on PC, tablet and phone with the MSN website, where sports scores, statistics, news and information is aggregated as the focus of a discrete vertical on the service.

21. *"Specifications"* means any technical or editorial guidelines set forth in any Exhibit, as may be reasonably updated from time to time by Microsoft for all of its data licensors upon 30 days' prior written notice to Licensor, subject to Licensor's consent; and

22. *"User"* means any person to whom, or entity to which, Microsoft distributes the Licensed Content.

**Exhibit B - Licensed Content**

This Exhibit describes the Licensed Content, Fees and other related terms:

| | |
|---|---|
| *LICENSED CONTENT* | |
| Licensed Territory | Worldwide |
| | |
| *LICENSED CONTENT DESCRIPTION* | |
| Licensed Content Item | Attribution Requirements |
| The sports structured data listed on Schedule 1 to Exhibit B | As listed in Section 3.2 of the Agreement |
| International sports structured data (as listed on Schedule 2 to Exhibit B) | As listed in Section 3.2 of the Agreement |
| Editorial (text) content and photographs (as listed on Schedule 3 to Exhibit B) | As listed in Section 3.2 of the Agreement |
| Headshots (as listed on Schedule 4 to Exhibit B) | As listed in Section 3.2 of the Agreement |
| Translations (as listed on Schedule 5 to Exhibit B) | N/A |

1.1. **Delivery and Format.** Commencing on the Delivery Date and continuing throughout the Term, Licensor will deliver the Licensed Content (updated in accordance with Section 1.3 of this Exhbit B below), described further in Section 1.4 of this Exhibit B below, to Microsoft in the format set forth in Schedule 1 to this Exhibit B, or as may be subsequently agreed upon by the parties and documented in a writing executed by both parties. In the event that Licensor intends to make any modifications to the format , such modifications shall be done in accordance with Section 9 of Exhibit C, and shall also include a reasonable level of detail explaining the modifications. Microsoft may request modifications to the format on 30 days' written notice to Licensor, but any such requested modifications are subject to the approval of Licensor. Licensor will ensure that Microsoft always has the most recent version of the Licensed Content. At all times the Licensed Content and Licensor will comply with the requirements of this Agreement.

1.2. **Delivery Date.** Licensor will begin delivering the Licensed Content in accordance with the Schedules attached to this Exhibit B. In the event that the Licensed Content does not comply with any of the terms of this Agreement, then Microsoft shall have the right to request that Company correct such deficiency and Company will promptly correct such deficiency and send Microsoft the corrected Licensed Content.

1.3. Content Quality. Company will:

1.3.1. Ensure that the feeds delivered to Microsoft are at least as current, and are updated at least as frequently, as the materials made available to Licensor's other customers who license identical feeds for substantially similar purposes and under substantially similar delivery protocols.

1.3.2. Deliver Licensed Content that complies with this Agreement , including the service level requirements in the Agreement; and, if applicable, the Video/Audio Service Partner Technical Requirements;

1.3.3. Use its best efforts to deliver Licensed Content that is complete, and free of errors in facts, grammar, punctuation and spelling, and of comparable style and quality as Licensed Content that was licensed to Microsoft under the Existing Agreements;

1.3.4. Not include advertising, links or promotional messages in the Licensed Content, other than to the extent specifically permitted under this Agreement;

1.3.5. If any of the Licensed Content contains expert, professional or other specialty advice (e.g., medical, psychological, financial), Licensor will ensure that it is reviewed by qualified professionals in such field with expertise on the particular topic, and it complies with applicable laws, regulations, and standards of the applicable profession, and upon request by Microsoft, provide Microsoft with reasonable evidence of compliance with these requirements); and

1.3.6. Comply with applicable governmental laws and regulations, including, with respect to Videos, comply with the closed captioning requirements of the 21st Century Communication and Video Accessibility Act, as applicable.

2. **Licensed Content Sources.** Licensor will provide Microsoft written notice of any material changes to Licensor's data sources that affect any portion of the Licensed Content. If a material change prevents Microsoft from utilizing any portion of the Licensed Content for its intended purpose, the parties will enter into good faith discussions to consider alternative solutions (and Microsoft will have no further payment obligations to Licensor with respect to the sports category or subset containing the affected portion of the Licensed Content until resolved). To the extent Microsoft determines, in its sole discretion, that such alternatives are unsatisfactory, it may terminate the Agreement immediately and without penalty, solely with respect to the sports category or subset containing the affected portion of the Licensed Content.

3. **Costs.** Licensor will monitor its own data feeds and pay all its own costs associated with removal of content that should not have been delivered to Microsoft, and reasonable costs incurred by Microsoft directly related to the removal of such content.

4. **Fees.**

4.1. **Pre-Commercial Availability Date.** Microsoft will continue to pay Licensor in accordance with the Existing Agreements.

4.2. **Post Commercial Availability Date.** Starting on the Commercial Availability Date, all payment obligations in the Existing Agreements will immediately cease, and Microsoft will pay Licensor an annual fee of [redacted]) ("***Annual Fee***"), payable in equal monthly installments of [redacted]. Beginning on the first anniversary of the Commercial Availability Date, the Annual Fee shall be increased to [redacted]), payable in equal monthly installments of [redacted]. Thereafter, the Annual Fee will increase [redacted] every year during the Term on the yearly anniversary of the Commercial Availability Date. Licensor will invoice Microsoft for the monthly portion of the Annual Fee at the start of each month after the Commercial Availability

Date. Upon termination of the Agreement by Microsoft, Licensor will provide Microsoft with a pro rata refund for any fees previously paid for license periods that exceed the effective date of such termination.

Schedule 1 to Exhibit B
Structured Data (US & Canada sports)

[Omitted]

Schedule 2 to Exhibit B
Structured Data (international sports)

[Omitted]

Schedule 3 to Exhibit B
Editorial (text) Content and Photos

[Omitted]

Schedule 4 to Exhibit B
Headshots

[Omitted]

Schedule 5 to Exhibit B
Translations

[Omitted]

Exhibit B-1 AP Graphics Bank Content

[Omitted]

# EXHIBIT C

## Service Level Agreement

[Omitted]

Exhibit D
Content/League Specific Requirements

[Omitted]

**First Amendment to the**
**Microsoft Content License Agreement**

This First Amendment is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("***Microsoft***"), and STATS LLC, a company with its principal place of business at 2775 Shermer Road, Northbrook, IL 60062 ("***Licensor***"). This Amendment will be effective as of the date of the later of the two signature dates below (the "***First Amendment Effective Date***"). The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 (the "***Agreement***") and desire to amend the Agreement as follows:

1. Section 1.1, Delivery and Format, to Exhibit B to the Agreement is amended to add the following paragraph at the end of Section 1.1, and the existing portion of Section 1.1 shall remain unchanged:

   Commencing on the First Amendment Effective Date and continuing through the second anniversary of the First Amendment Effective Date (the "***First Amendment Term***"), but subject to termination in accordance with the Agreement, Licensor will deliver the First Amendment Licensed Content to Microsoft in the format set forth in Schedule 1-A to Exhibit B, or as may be subsequently agreed upon by the parties and documented in a writing executed by both parties. In the event the Agreement is not renewed by the parties after the Initial Term, then, notwithstanding the non-renewal, Microsoft shall continue to have all of the same rights and benefits, and Licensor shall have all of the same obligations, under the Agreement with respect to the First Amendment Licensed Content for the remainder of the First Amendment Term. For purposes of clarity, in such event, after the conclusion of the Initial Term and continuing until the conclusion of the First Amendment Term, (i) Licensor shall continue to deliver to Microsoft the First Amendment Licensed Content, and (ii) Licensor's delivery of all other portions of the Licensed Content (other than the First Amendment Licensed Content portion) shall cease.

2. A new Section 4.3 is added to Exhibit B to the Agreement to read as follows:

   **4.3. First Amendment Fees.** In consideration of the rights granted by Licensor to Microsoft pursuant to this First Amendment, during the First Amendment Term, Microsoft will pay Licensor a one-time fee of [redacted] (the "***First Amendment Fee***"), payable on the First Amendment Effective Date. For the avoidance of doubt the First Amendment Fee is in addition to any other fees set forth in the Agreement.

3. Licensor agrees that the representations and warranties set forth in Section 8.2 of the Agreement shall apply with respect to the First Amendment Licensed Content delivered pursuant to this Amendment. Licensor further agrees that the indemnification obligations set forth in Section 9 of the Agreement shall apply in respect of the First Amendment Licensed Content to the same extent as those obligations apply in respect of the Licensed Content. The parties agree that Section 2 of Exhibit B to the Agreement shall not apply with respect to the First Amendment Licensed Content, and Licensor shall continuously provide the First Amendment Licensed Content throughout the Term in accordance with Section 9.2 of the Agreement.

4. Schedule 1 to Exhibit B shall be amended to include the proprietary data and information set forth in the attached Schedule 1-A to Exhibit B (the "***First Amendment Licensed Content***").

5. Defined terms in this First Amendment will have the same meaning as set forth in the Agreement, except as otherwise provided herein. Except as expressly amended by this First Amendment, the Agreement remains in full force and effect.

**AGREED AND ACCEPTED,**

| MICROSOFT ONLINE INC. | LICENSOR (STATS LLC) |
|---|---|
| [signature] | [signature] |
| Signature | Signature |
| Shannon Stockwell | Kenneth Fuchs |
| Name (Print) | Name (Print) |
| Contract Execution | CEO |
| Title | Title |
| 4/19/2016 | 4/14/16 |
| Date | Date |

# Schedule 1-A to Exhibit B First Amendment Licensed Content

[Omitted]

**Second Amendment to the**
**Microsoft Content License Agreement**

This Second Amendment is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 2775 Shermer Road, Northbrook, IL 60062 ("**Licensor**"). This Amendment will be effective as of the latter of the two signature dates below (the "**Second Amendment Effective Date**").

1. The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014, as amended ("**Agreement**") and desire to further amend the Agreement as follows:

2. A new Section 4.3 is added to Exhibit B to the Agreement to read as follows

4.3 **Cricket Data Fees.** Starting on the Second Amendment Effective Date and continuing through the second anniversary of the Second Amendment Effective Date (the "Second Amendment Term"), Microsoft will pay Licensor a fee of [redacted] for the Cricket Data listed on Schedule 2 to Exhibit B, payable in equal monthly installments of [redacted] each during the first twelve months of the Second Amendment Term, and equal monthly installments of [redacted] each during the second twelve months of the Second Amendment Term. All fees set forth in this Second Amendment are in addition to any other fees set forth in the Agreement. In the event the Agreement is not renewed by the parties after the Initial Term, then, notwithstanding the non-renewal, Microsoft shall continue to have all of the same rights and benefits and obligations, and Licensor shall have all of the same rights, benefits and obligations, under the Agreement with respect to the Second Amendment Licensed Content for the remainder of the Second Amendment Term. For purposes of clarity, in such event, after the conclusion of the Initial Term and continuing until the conclusion of the Second Amendment Term, (i) Licensor shall continue to deliver to Microsoft the Second Amendment Licensed Content, (ii) Microsoft shall continue to pay the fees set forth in this Second Amendment, and (iii) Licensor's delivery of all other portions of the Licensed Content (other than the Second Amendment Licensed Content portion) shall cease.

3. Licensor agrees that the representations and warranties set forth in Section 8.2 of the Agreement shall apply with respect to the Second Amendment Licensed Content delivered pursuant to this Amendment. Licensor further agrees that the indemnification and defense obligations set forth in Section 9 of the Agreement shall apply in respect of the Second Amendment Licensed Content to the same extent as those obligations apply in respect of the Licensed Content. The parties agree that Section 2 of Exhibit B to the Agreement shall not apply with respect to the Second Amendment Licensed Content, and Licensor shall continuously provide the Second Amendment Licensed Content throughout the Second Amendment Term in accordance with Section 9.2 of the Agreement.

4. Schedule 2 to Exhibit B shall be deleted in its entirety and replaced with the proprietary data and information set forth in the attached Schedule 2 to Exhibit B (the "**Second Amendment Licensed Content**").

5. Defined terms in this Second Amendment will have the same meaning as set forth in the Agreement, except as otherwise provided herein. Except as expressly amended by this Second Amendment, the Agreement remains in full force and effect.

| MICROSOFT ONLINE INC. | | LICENSOR (STATS LLC) | |
|---|---|---|---|
| | Microsoft Online, Inc. | | [illegible] |
| By | [signature] | By | [signature] |
| Name (Print) | Cindy Bondoc | Name (Print) | |
| | Contract Execution | | CEO |
| Title | 5/5/2016 | Title | 4/22/16 |
| Date | | Date | |

Schedule 2 to Exhibit B Cricket Data

[Omitted]

DocuSign Envelope ID: A733D83E-3381-48C8-9013-FA0577828BDF

**Third Amendment to the**
**Microsoft Content License Agreement**

This Third Amendment to the Microsoft Content License Agreement ("**Third Amendment**") is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 203 North LaSalle Street, Suite 2200, Chicago, IL 60601 ("**Licensor**"). This Amendment will be effective as of the latter of the two signature dates below.

The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 ("**Agreement**"), as amended on April 19, 2016 ("**First Amendment**") and May 5, 2016 ("**Second Amendment**") and desire to further amend the Agreement as follows:

1. The parties agree to extend the Initial Term (as defined in the Agreement), the First Amendment Term (as defined in the First Amendment) and the Second Amendment Term (as defined in the Second Amendment) through June 30, 2018.

2. The parties agree that the total fees payable by Microsoft to Licensor under the Agreement, the First Amendment and the Second Amendment for the period from October 1, 2017 through June 30, 2018 shall be [redacted]. Microsoft will pay such fees in equal monthly installments of [redacted] each in accordance with the invoicing terms set forth in the Agreement.

Defined terms in this Third Amendment shall have the same meaning as set forth in the Agreement, the First Amendment or the Second Amendment, as applicable, except as otherwise provided herein. Except as expressly amended by this Third Amendment, the Agreement (as amended by the First and Second Amendments) shall remain in full force and effect.

| MICROSOFT ONLINE INC. | | LICENSOR | DocuSigned by: 6BC63F8B390F44B... |
|---|---|---|---|
| By | | By | CEO |
| | Shannon Stockwell | | |
| Name (Print) | Contract Execution | Name (Print) | Kenneth Fuchs |
| Title | 6/28/2017 | Title | 6/7/2017 |
| Date | | Date | |

DocuSign Envelope ID: CD88F11B-A2EA-492C-8076-0CD83127BFC8

**Fourth Amendment to the**
**Microsoft Content License Agreement**

This Fourth Amendment to the Microsoft Content License Agreement ("**Fourth Amendment**") is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 203 North LaSalle Street, Suite 2200, Chicago, IL 60601 ("**Licensor**"). This Amendment will be effective as of the latter of the two signature dates below (the "**Fourth Amendment Effective Date**").

The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 ("**Agreement**"), as amended on April 19, 2016 ("**First Amendment**"), May 5, 2016 ("**Second Amendment**"), and June 28, 2017 (the "**Third Amendment**") and desire to further amend the Agreement as follows:

1. Section 1.1, Delivery and Format, to Exhibit B to the Agreement is amended to add the following paragraph at the end of Section 1.1, and the existing portion of Section 1.1 shall remain unchanged:

   Commencing on the Fourth Amendment Effective Date and continuing through June 30, 2018 (the "***Fourth Amendment Term***"), but subject to termination in accordance with the Agreement, Licensor will deliver the proprietary data and information set forth in Schedule 2-A to Exhibit B (the "***Fourth Amendment Licensed Content***") in the format set forth in such Schedule 2-A, or as may be subsequently agreed upon by the parties and documented in a writing executed by both parties.

2. A new Section 4.4 is added to Exhibit B to the Agreement to read as follows:

   **4.4. Fourth Amendment Fees.** In consideration of the rights granted by Licensor to Microsoft pursuant to this Fourth Amendment, during the Fourth Amendment Term, Microsoft will pay Licensor a one-time fee of [redacted] (the "***Fourth Amendment Fee***") for the Fourth Amendment Licensed Content, payable on the Fourth Amendment Effective Date. For the avoidance of doubt the Fourth Amendment Fee is in addition to any other fees set forth in the Agreement.

3. Schedule 2 to Exhibit B shall be amended to add the proprietary data and information set forth in the attached Schedule 2-A .

[Remainder of page intentionally left blank]

DocuSign Envelope ID: CD88F11B-A2EA-492C-8076-0CD83127BFC8

4. Defined terms in this Fourth Amendment shall have the same meaning as set forth in the Agreement, the First Amendment, the Second Amendment or the Third Amendment, as applicable, except as otherwise provided herein. Except as expressly amended by this Fourth Amendment, the Agreement (as amended by the First, Second, and Third Amendments) shall remain in full force and effect.

| MICROSOFT ONLINE INC. | | LICENSOR | |
|---|---|---|---|
| | DocuSigned by: Camille Vicente 2707BD23ED734F7... | | DocuSigned by: 6BC63F8B390F44B... |
| By | Camille Vicente | By | Ken Fuchs |
| Name (Print) | AdOps | Name (Print) | CEO |
| Title | 12/1/2017 | Title | 12/1/2017 |
| Date | | Date | |

# Schedule 2-A to Exhibit B Fourth Amendment Licensed Content

[Omitted]

**Fifth Amendment to the**
**Microsoft Content License Agreement**

This Fifth Amendment to the Microsoft Content License Agreement ("**Fifth Amendment**") is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 203 North LaSalle Street, Suite 2200, Chicago, IL 60601 ("**Licensor**"). This Amendment will be effective as of the latter of the two signature dates below.

The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 ("**Agreement**"), as amended on April 19, 2016 ("**First Amendment**") and May 5, 2016 ("**Second Amendment**"), and June 28, 2017 (the "**Third Amendment**") and December 1, 2017 (the "**Fourth Amendment**"). The Microsoft Content License Agreement, the First Amendment, the Second Amendment, the Third Amendment, and the Fourth Amendment shall be referred to collectively herein as the "Agreement," and the parties desire to further amend the Agreement as follows:

1. The parties agree to extend the Initial Term from July 1, 2018 through June 30, 2023 (the "**Fifth Amendment Term**"). For purposes of this Fifth Amendment, the following terms shall have the following meanings:

   "**Fifth Amendment Year One**" shall mean July 1, 2018 through and including June 30, 2019.
   "**Fifth Amendment Year Two**" shall mean July 1, 2019 through and including June 30, 2020.
   "**Fifth Amendment Year Three**" shall mean July 1, 2020 through and including June 30, 2021.
   "**Fifth Amendment Year Four**" shall mean July 1, 2021 through and including June 30, 2022.
   "**Fifth Amendment Year Five**" shall mean July 1, 2022 through and including June 30, 2023.

2. Section 1.1, Delivery and Format, to Exhibit B of the Agreement is amended to add the following paragraph at the end of Section 1.1, and the existing portion of Section 1.1 shall remain unchanged:

   Initial Widgets. Commencing on January 1, 2018 and continuing through the end of the Fifth Amendment Term, but subject to Microsoft's proper exercise of the Partial Termination Option-Widgets or other termination in accordance with the Agreement, Licensor will deliver the widgets set forth in Section I.A. of Schedule 2-B to Exhibit B (collectively, the "**Initial Widgets**") in the format and according to the time frames described in such Schedule 2-B to Exhibit B, or as may be subsequently agreed upon by the parties and documented in a writing executed by the parties. If Licensor enhances or updates any Initial Widget(s), then the enhanced or updated version of such Initial widget(s) will be provided to Microsoft and deemed Initial Widgets hereunder.

   Additional Widgets. At any time during the Fifth Amendment Term, provided that Microsoft has not exercised its Partial Termination Option – Widgets, Microsoft shall have the option (the "**Additional Widgets Option**") to elect to receive the additional widgets set forth in Section I.B. of Schedule 2-B to Exhibit B (collectively, the "**Additional Widgets**") provided that Microsoft (i) provides to Licensor sixty (60) days advance written notice of its intent to exercise the Additional Widgets Option (provided that the Additional Widgets have already been made generally available by Licensor; if Licensor has not yet made the Additional Widgets generally available, then the parties will mutually agree on a timeline for delivery of the Additional

Widgets to Microsoft), and (ii) pays to Licensor the additional license fees (the "**Additional Widgets License Fees**") set forth in Section 4.5.3 below.

The Initial Widgets plus the Additional Widgets, if applicable, shall be collectively referred to as the "**Fifth Amendment Licensed Content.**"

3. A new Section 4.5 is added to Exhibit B to the Agreement to read as follows:

4.5.1 License Fees for renewal of the licenses set forth in the Agreement during the Fifth Amendment Term and fees for the Initial Widgets. In lieu of any other fees set forth in the Agreement (other than the Fourth Amendment Fee and the fees payable under the Third Amendment) and in consideration of the rights granted by Licensor to Microsoft pursuant to the Agreement as amended by this Fifth Amendment, Microsoft will pay Licensor fees (the "**Fifth Amendment License Fees**"), payable as follows:

(a) Initial Widget Fee. Microsoft shall pay Licensor a one-time fee in connection with the MLB portion of the Initial Widgets in the amount of [redacted] ("**Initial Widget Fee**") due to Licensor upon the date of the last signature necessary for the full execution of this Fifth Amendment, which Initial Widget Fee shall be applicable against and deducted from the Fifth Amendment Year One license fee set forth in Section 4.5.1(b) below.
(b) Fifth Amendment Year One License Fee. During Fifth Amendment Year One, Microsoft shall pay Licensor a total fee in the amount of [redacted] less the Initial Widget Fee (i.e., the amount of [redacted] in equal monthly installments of [redacted] per month.
(c) Fifth Amendment Year Two License Fee. Beginning on July 1, 2019 and continuing during Fifth Amendment Year Two, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in equal monthly installments of [redacted] per month.
(d) Fifth Amendment Year Three License Fee. Beginning on July 1, 2020 and continuing during Fifth Amendment Year Three, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in equal monthly installments of [redacted] per month.
(e) Fifth Amendment Year Four License Fee. Beginning on July 1, 2021 and continuing during Fifth Amendment Year Four, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in eleven (11) equal monthly installments of [redacted] each and one (1) installment of [redacted] per month.
(f) Fifth Amendment Year Five License Fee. Beginning on July 1, 2022 and continuing during Fifth Amendment Year Five, Microsoft shall pay Licensor a total fee in the amount of [redacted] payable in eleven (11) equal monthly installments of [redacted] each and one (1) installment of [redacted] per month.

4.5.2 Fifth Amendment License Fees – Reduced. In the event that Microsoft properly exercises its Partial Termination Option-Widgets (as defined below), then the Fifth Amendment License

Fees stated above shall be deleted in their entirety and replaced as follows: Microsoft shall pay to Licensor reduced fees (the "**Fifth Amendment License Fees (excluding Widgets)**"), as follows:

(a) Initial Widgets. (i) Microsoft shall pay Licensor a one-time fee in connection with the MLB portion of the Initial Widgets in the amount of [redacted] due to Licensor upon the date of the last signature necessary for the full execution of this Fifth Amendment, and (ii) Partial Termination Fee-Widgets [redacted] payable in accordance with Section 6.5.

(b) Fifth Amendment Year One License Fee (excluding Widgets). Beginning on July 1, 2018 and continuing during Fifth Amendment Year One, Microsoft shall pay Licensor a Fifth Amendment Year One License Fee (excluding Widgets) of [redacted], payable to Licensor in eleven (11) equal monthly installments of [redacted] and one (1) final monthly installment for Fifth Amendment Year One of [redacted].

(c) Fifth Amendment Year Two License Fee (excluding Widgets). Beginning on July 1, 2019 and continuing during Fifth Amendment Year Two, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in eleven (11) equal monthly installments of [redacted] and one (1) final monthly installment of [redacted].

(d) Fifth Amendment Year Three License Fee (excluding Widgets). Beginning on July 1, 2020 and continuing during Fifth Amendment Year Three, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in equal monthly installments of [redacted].

(e) Fifth Amendment Year Four License Fee (excluding Widgets). Beginning on July 1, 2021 and continuing during Fifth Amendment Year Four, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in twelve (12) equal monthly installments of [redacted].

(f) Fifth Amendment Year Five License Fee (excluding Widgets). Beginning on July 1, 2022, and continuing during Fifth Amendment Year Five, Microsoft shall pay Licensor a total fee in the amount of [redacted], payable in twelve (12) equal monthly installments of [redacted].

4.5.3 Additional Widgets License Fees. In the event that Microsoft properly exercises the Additional Widgets Option, then Microsoft shall pay to Licensor an additional license fee ("**Additional Widgets Annual Fee**") in the amount of [redacted] covering the first twelve month period after the Additional Widgets Option is exercised, payable to Licensor as follows: (i) [redacted] shall be payable on the date Microsoft exercises the Additional Widgets Option (the "**Additional Widgets Exercise Date**") and (ii) the remaining [redacted] shall be payable in eleven (11) equal monthly payments of [redacted] and (iii) one 1 monthly installment of [redacted]. Thereafter, the Additional Widgets Annual Fee will increase [redacted] each subsequent twelve month period during the Fifth Amendment Term on the anniversary date of the Additional Widgets Exercise Date. Licensor will invoice Microsoft for the monthly portion of the Additional Widgets Annual Fee at the start of each month after the Additional Widgets Exercise Date. In the event of the termination of the Agreement by Microsoft, Licensor will provide Microsoft with a pro rata

refund for any portion of the Additional Widgets Annual Fee previously paid for license periods that exceed the effective date of such termination.

4. Section 6 of the Agreement, Term and Termination shall be amended to include the following:

6.5 Partial Termination Option-Widgets. In the event that the metric is met for all key performance indicators ("**KPI**") set forth in Schedule 2-C to Exhibit B, Microsoft shall not be permitted to exercise the Partial Termination Option-Widgets. However, in the event that the metric for all KPIs is not met, Microsoft shall have the right to terminate the Initial Widgets portion of the Agreement (the "**Partial Termination Option-Widgets**") provided Microsoft: (a) is not in breach of this Agreement or no event has occurred that would constitute a breach of the Agreement, and (b) provides written notice to Licensor of its intent and written support of its right to exercise its Partial Termination Option – Widgets (the "**Partial Termination Notice**") on or before the later to occur of (i) the date that is eight (8) weeks from the initial launch of the MLB Widgets (as described in Section I.A.1 of Schedule 2-B to Exhibit B) on the Microsoft Offering, which is currently scheduled for May 30, 2018 (subject to change) or (ii) July 30, 2018. In the event that Microsoft properly exercises its Partial Termination Option-Widgets, Microsoft shall pay to Licensor a fee (the "**Partial Termination Fee-Widgets**") in the amount of [redacted] not later than September 1, 2018. For purposes of clarity, in the event that Microsoft properly exercises its Partial Termination Option-Widgets, Licensor shall cease supporting the MLB Widgets, effective September 30, 2018.

6.6 Termination Option–Discontinuation of Structured Data. Microsoft may terminate this Agreement upon 90 days prior written notice to Licensor in the event that Microsoft ceases to offer sports statistical information which is substantially similar to the Licensed Content (which, for clarity, Microsoft's offering of textual, video or photographic content such as articles and videos that may include sports statistical information does not constitute offering sports statistical information substantially similar to the Licensed Content) on the MSN-branded portion of the Microsoft Offering, provided that (1) such termination shall not be effective prior to July 1, 2020, and (2) the parties shall discuss in good faith the terms for the continued licensing of content for other portions of the Microsoft Offering, if any.

6.7 Partial Termination Option–Bing Takeover of Structured Data. In the event that Microsoft's Bing team takes control of Microsoft's use of sports statistical information substantially similar to the Licensed Content on the Microsoft Offering (which excludes textual, video or photographic content, as provided in Section 6.6), Microsoft may terminate the Fifth Amendment Licensed Content portion of this Agreement upon 90 days prior written notice to Licensor ("Bing Widget Termination Option"), provided that such termination shall not be effective prior to July 1, 2020. In the event Microsoft exercises its Bing Widget Termination Option hereunder, then from and after the effective date of such termination, in lieu of the Fifth Amendment License Fees, the fee payable by Microsoft in connection with Microsoft's use of the Licensed Content will be the Fifth Amendment License Fees (excluding Widgets).

5. Licensor agrees that the representations and warranties set forth in Section 8.2 of the Agreement shall apply with respect to the Fifth Amendment Licensed Content delivered pursuant to this Amendment. Licensor further agrees that the indemnification and defense obligations set forth in Section 9 of the Agreement shall apply in respect of the Fifth Amendment Licensed Content to the same extent as those obligations apply in respect of the

Licensed Content. Once the widgets are delivered/made available by Licensor to Microsoft, and provided Microsoft does not exercise its Partial Termination Option-Widgets, Licensor shall continuously support the Fifth Amendment Licensed Content throughout the Fifth Amendment Term in accordance with Section 9.2 of the Agreement.

6. Schedule 2 to Exhibit B shall be amended to add the proprietary data and information set forth in the attached Schedule 2-B.

7. Exhibit D of the Agreement, Content/League Specific Requirements, shall be amended to delete the following sections in their entirety: (i) Section A, NBA Terms and Conditions, (ii) Section B, MLBAM Terms and Conditions, and (iii) Section D, NFL Terms & Conditions.

Defined terms in this Fifth Amendment shall have the same meaning as set forth in the Agreement, the First Amendment, the Second Amendment, the Third Amendment, and the Fourth Amendment, as applicable, except as otherwise provided herein. Except as expressly amended by this Fifth Amendment, the Agreement (as amended by the First Amendment Second Amendment, Third Amendment, and Fourth Amendment) shall remain in full force and effect.

| MICROSOFT ONLINE INC. | LICENSOR |
| --- | --- |
| DocuSigned by: Shea Ryan E70CE58C82A04A8... | DocuSigned by: [signature] 683E05113EF94E8... |
| By Shea Ryan | By Justin Estvold |
| Name (Print) Channel Execution Manager | Name (Print) CHIEF FINANCIAL OFFICER |
| Title 2/14/2018 | Title 2/13/2018 |
| Date | Date |

Schedule 2-B to Exhibit B Fifth Amendment Licensed Content

[Omitted]

# Schedule 2-C to Exhibit B Key Performance Indicators and MLB Widget Launch Plan

[Omitted]

Schedule 2-D to Exhibit B Sample Configuration

[Omitted]

**SIXTH AMENDMENT to the**
**Microsoft Content License Agreement**

This Sixth Amendment to the Microsoft Content License Agreement ("**Sixth Amendment**") is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 203 North LaSalle Street, Suite 2200, Chicago, IL 60601 ("**Licensor**"). This Sixth Amendment will be effective as of the later of the two signature dates below.

The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 ("**Agreement**"), as amended on April 19, 2016 ("**First Amendment**"), May 5, 2016 ("**Second Amendment**"), June 28, 2017 ("**Third Amendment**"), December 1, 2017 ("**Fourth Amendment**") and February 14, 2018 ("**Fifth Amendment**"). The Microsoft Content License Agreement, the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment and the Fifth Amendment will be referred to collectively herein as the "Agreement," and the parties desire to further amend the Agreement as follows:

Microsoft and Licensor hereby agree to modify the Agreement as follows:

1. Section 1.1, Delivery and Format, to Exhibit B to the Agreement is amended to add the following paragraph at the end of Section 1.1, and the existing portion of Section 1.1 will remain unchanged:

   Commencing on the Sixth Amendment Effective Date and continuing through February 2, 2020 (the "**Sixth Amendment Term**"), but subject to termination in accordance with the Agreement, Licensor will deliver the proprietary data and information set forth in Schedule 2-C to Exhibit B (the "**Sixth Amendment Licensed Content**") in the format set forth in such Schedule 2-C, or as may be subsequently agreed upon by the parties and documented in a writing executed by both parties.

2. A new Section 4.6 is added to Exhibit B to the Agreement to read as follows:

   4.6. Sixth Amendment Fees. In consideration of the rights granted by Licensor to Microsoft pursuant to this Sixth Amendment, during the Sixth Amendment Term, Microsoft will pay Licensor a one-time fee of [redacted] (the "**Sixth Amendment Fee**") for the Sixth Amendment Licensed Content, payable pursuant to Section 5.2 of the Agreement. For the avoidance of doubt, the Sixth Amendment Fee is in addition to any other fees set forth in the Agreement.

3. Schedule 2 to Exhibit B will be amended to add the proprietary data and information set forth in the attached Schedule 2-C. For the avoidance of doubt, Sixth Amendment Licensed Content will be deemed part of "Licensed Content," as defined in the Agreement.

4. Defined terms in this Sixth Amendment will have the same meaning as set forth in the Agreement, the First Amendment, the Second Amendment, the Third Amendment, Fourth Amendment or Fifth Amendment, as applicable, except as otherwise provided herein. Except as expressly amended by this Sixth Amendment, the Agreement (as amended by the First, Second, Third, Fourth and Fifth Amendments) shall remain in full force and effect.

Except as specifically modified herein or in prior amendments, all other terms and conditions of the Agreement will remain in full force and effect.

Whereby the parties enter into this Sixth Amendment as of the Sixth Amendment Effective Date.

| MICROSOFT ONLINE INC. | STATS LLC |
|---|---|
| By (Sign) DocuSigned by: Audrina McNeil 86EC80BE1CF34EC... | (Sign) DocuSigned by: Jill D. Hansen 206B7B767282423... |
| Name(Print) Audrina McNeil | Name(Print) Jill D. Hansen |
| Title Contract Execution | Title CFO |
| Date 4/10/2019 | Date 4/10/2019 |

Schedule 2-C to Exhibit B Sixth Amendment Licensed Content

[Omitted]

**SEVENTH AMENDMENT to the**
**Microsoft Content License Agreement**

This Seventh Amendment to the Microsoft Content License Agreement ("**Seventh Amendment**") is entered into by Microsoft Online Inc., a company with its principal place of business at 6100 Neil Road, Reno, Nevada, 89511-1137 ("**Microsoft**"), and STATS LLC, a company with its principal place of business at 203 North LaSalle Street, Suite 2200, Chicago, IL 60601 ("**Licensor**"). This Seventh Amendment will be effective as of the later of the two signature dates below.

The parties have entered into the Microsoft Content License Agreement, effective May 15, 2014 ("**Agreement**"), as amended on April 19, 2016 ("**First Amendment**"), May 5, 2016 ("**Second Amendment**"), June 28, 2017 ("**Third Amendment**"), December 1, 2017 ("**Fourth Amendment**"), February 14, 2018 ("**Fifth Amendment**"), and April 10, 2019 ("**Sixth Amendment**"). The Microsoft Content License Agreement, the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment, the Fifth Amendment, and the Sixth Amendment will be referred to collectively herein as the "**Agreement**," and the parties desire to further amend the Agreement as follows:

Microsoft and Licensor hereby agree to modify the Agreement as follows:

1. Section 1.1, Delivery and Format, to Exhibit B to the Agreement is amended to add the following paragraph at the end of Section 1.1, and the existing portion of Section 1.1 will remain unchanged:

   Commencing on July 1, 2019 and ending conterminously with the Agreement (the "**Seventh Amendment Term**"), but subject to termination in accordance with the Agreement, Licensor will deliver the proprietary data and information set forth in Schedule 2-D to Exhibit B (the "**Seventh Amendment Licensed Content**") in the format set forth in such Schedule 2-D, or as may be subsequently agreed upon by the parties and documented in a writing executed by both parties.

2. A new Section 4.7 is added to Exhibit B to the Agreement to read as follows:

   **4.7. Seventh Amendment Fees.** In consideration of the rights granted by Licensor to Microsoft pursuant to this Seventh Amendment, during the Seventh Amendment Term, Microsoft will pay Licensor for the Seventh Amendment Licensed Content as follows, payable pursuant to Section 5.2 of the Agreement (the "**Seventh Amendment Fee**").

| **Period** | **Seventh Amendment Fee** | **Seventh Amendment Monthly Fee** |
|---|---|---|
| July 1, 2019 – June 30, 2020 | [redacted] | [redacted] |
| July 1, 2020 – June 30, 2021 | [redacted] | [redacted] |
| July 1, 2021 – June 30, 2022 | [redacted] | [redacted] |
| July 1, 2022 – June 30, 2023 | [redacted] | [redacted] |

   For the avoidance of doubt, the Seventh Amendment Fee is in addition to any other fees set forth in the Agreement.

3. Schedule 2 to Exhibit B will be amended to add the proprietary data and information set forth in the attached Schedule 2-D. For the avoidance of doubt, Seventh Amendment Licensed Content

will be deemed part of "Licensed Content," as defined in the Agreement.

4. Exhibit D of the Agreement, Content/Leagues Specific Requirements, shall be amended to include the additional terms and conditions set forth in the attached Schedule 1 to Exhibit D.

5. In respect of the Seventh Amendment Licensed Content only, the following clauses from the terms and conditions as set forth in the attached Exhibit E shall apply: (a) Clause 2 (Licenses); (b) Clause 3 (Specific Restrictions and Requirements); (c) Clause 4 (Microsoft Offerings; Marketing Sales); (d) Clause 6.4 (Costs); (e) Clause 7.5 (Suspension); (f) Clause 9.2.1 – 9.2.3 (Representations and Warranties); (g) Clause 10.2 (Microsoft Indemnity); and (h) Clause 10.4 (Duty to correct Licensed Content).

6. If there is any conflict between the provisions referred to in Section 5 above and the provisions of the Agreement, the above provisions, in the form set out in Exhibit E, shall prevail in respect of the Seventh Amendment Licensed Content only. No other terms from Exhibit E shall apply to the Agreement.

7. Defined terms in this Seventh Amendment will have the same meaning as set forth in the Agreement, the First Amendment, the Second Amendment, the Third Amendment, Fourth Amendment, Fifth Amendment, or Sixth Amendment, as applicable, except as otherwise provided herein. Except as expressly amended by this Seventh Amendment, the Agreement (as amended by the First, Second, Third, Fourth, Fifth and Sixth Amendments) shall remain in full force and effect.

Except as specifically modified herein or in prior amendments, all other terms and conditions of the Agreement will remain in full force and effect.

Whereby the parties enter into this Seventh Amendment as of the Seventh Amendment Effective Date.

| MICROSOFT ONLINE INC. | STATS LLC |
|---|---|
| By (Sign): DocuSigned by: John Hepler 5CA60E6673E6441... | By (Sign): DocuSigned by: [signature] 847D722B1D68494... |
| Name (Print): John Hepler | Name (Print): Mike Perez |
| Title: Implementation Manager | Title: COO |
| Date: 9/4/2019 | Date: 9/4/2019 |

Schedule 2-D to Exhibit B Seventh Amendment Licensed Content

[Omitted]

Schedule 1 to Exhibit D

[Omitted]

**Exhibit E**
**Provisions for the Seventh Amendment Licensed Content**

2. **LICENSES**

**2.1. Grant**. Licensor grants Microsoft non-exclusive, worldwide, non-transferable, fully paid-up rights during the Term to:

2.1.1. Reproduce, integrate, publicly perform, publish, display, translate and transmit the Licensed Content as part of any Microsoft Offerings including through RSS, application programming interfaces (subject to the remainder of this Section 2.1.1), blog, email, shortcuts, email feeds, newsletters, and short message service, in accordance with this Agreement including the Exhibits (the "***Permitted Purpose***"), and (a) subject to Section 3 below, prepare derivative works of the Licensed Content solely to the extent necessary for and incidental to the Permitted Purpose ("***Derivative Works***"); (b) edit or modify the formatting of and manner in which Licensed Content is displayed and provided that the Licensed Content scores and data themselves are never edited, modified, altered or amended in any way and the substance of the Licensed Content editorial content is never edited, modified, altered or amended in any way; (c) subject to Section 3, copy, merge, append, and aggregate Licensed Content, in each case solely to the extent necessary for and incidental to the Permitted Purpose. For clarity, Microsoft may distribute a Microsoft Offering which includes the Licensed Content via application programming interface or other similar means provided that such application programming interface or similar means are not distributed in a manner that would enable Licensed Content to be downloaded permanently. The Licensed Content may be temporarily downloaded in the form of caching to the extent necessary to enable Users to view and access Licensed Content offline.

2.1.2. Allow Users of Microsoft Offerings to access and use the Licensed Content for non-commercial, personal use only and use reasonable endeavours to ensure that the Licensed Content is not used, reproduced and/or used by Users of Microsoft Offerings for any commercial purpose (such as by way of including appropriate restrictions in the terms and conditions of the Microsoft Offerings).

2.1.3. Use the Licensed Content, as such Licensed Content appears in the Microsoft Offering pursuant to the license rights in this Agreement, to demonstrate and promote the Microsoft Offering at industry events, presentations, advertising "upfronts", and on Microsoft's corporate web sites. For any usage other than demonstrations or screenshots of Microsoft Offerings, Microsoft will seek Licensor's prior written approval of the general form and nature of each campaign or intended use, but for clarity Microsoft will not be required to seek Licensor's approval to each individual instance of use. Microsoft will not use the Licensed Content in a negative, obscene, libelous or defamatory manner, or in a manner as to create the appearance of sponsorship, endorsement or affiliation between Licensor and Microsoft;

2.1.4. Sublicense the foregoing rights to the Licensed Content to Microsoft Affiliates solely to the extent necessary in order for Microsoft to exercise its rights under this Agreement. Microsoft will ensure that each Microsoft Affiliate to whom any rights are sub-licensed complies with the terms of this Agreement and Microsoft will remain responsible for the Microsoft Affiliate's acts and omissions.

**2.2. Reservation.** As between the parties and subject to the licenses in this Agreement:

2.2.1. Licensor owns or controls all rights (including all intellectual property rights) in the Licensed Content; and

2.2.2. Microsoft owns all rights in the Microsoft Offering and any software, tools, content, materials, specifications, guidelines and instructions provided by Microsoft to Licensor to include in or create the Licensed Content or otherwise fulfill Licensor's obligations under this Agreement.

Should any right, title or interest in the Licensed Content become vested in Microsoft or any Microsoft Affiliate (by operation of the law or otherwise), Microsoft or the Microsoft Affiliate shall assign the same free of any third party rights and without payment, to Licensor for the full duration of such rights and all extensions, renewals and reversions thereof and Microsoft hereby assigns to Licensor (by way of present assignment of future rights) absolutely, with full title guarantee, any and all intellectual property rights throughout the world and for the full duration of such rights, including any rights in and to any and all materials included, produced and/or edited by Microsoft.

Each party reserves all rights not expressly granted or waived in this Agreement.

**3. SPECIFIC RESTRICTIONS AND REQUIREMENTS**

**3.1. GENERAL RESTRICTIONS AND REQUIREMENTS.** Microsoft warrants, represents and undertakes during the Term that:

3.1.1. It will not exhibit the Licensed Content with third party materials in a manner that either (a) materially distorts its meaning or (b) implies that Microsoft or a third party has created such Licensed Content.

3.1.2. It will not use or distribute any Licensed Content outside of the Microsoft Offerings.

3.1.3. It will not store or archive Licensed Content other than solely to the extent necessary for internal administrative purposes or as necessary to properly operate the Microsoft Offerings (e.g., temporary downloading by way of caching to the extent necessary to enable Users to view and access Licensed Content offline on mobile applications).

3.1.4. Except as otherwise allowed under this Agreement, it will not provide, distribute or otherwise make available the Licensed Content in whole or in part to any third party on a stand-alone basis (whether as a product, file or database or otherwise).

3.1.5. In no circumstances may Microsoft use any of the Licensed Content as part of any gaming or betting service, facility, functionality or arrangement (such as the provision of betting odds) whether owned or developed by Microsoft, or in conjunction with or for any other provider, operator or aggregator of gaming or betting services anywhere in the world; provided, however, that nothing shall prevent Microsoft from displaying advertisements or marketing content for gaming or betting services, facilities, functionalities or arrangements on sections of the Microsoft Offering displaying Licensed Content. For the purposes of this Agreement references to "gaming" includes incorporating the Licensed Content directly into any games that have no betting or gambling elements or are not primarily for betting or gambling purposes, such as sports action games where users control athletes' actions through a console controller, joystick or similar input device, similar to the FIFA or Madden franchises from Electronic Arts, developed for the Xbox console and, subject to Section 3.1.6, fantasy games.

3.1.6. Save for Licensed Content which is controlled by Dataco or DFL, and subject to any other Data Controller restrictions notified by Licensor to Microsoft from time to time, Microsoft may use Licensed Content in fantasy games for ancillary or incidental purposes only and not in any way which is integral to the functionality and operation of the fantasy game. For the purposes of this Agreement, ancillary or incidental purposes include Microsoft displaying Licensed Content in areas of Microsoft Offerings that include fantasy gaming news and information, fantasy gaming data not provided by Licensor, and other fantasy gaming content modules (being sections that contain, for example, an End User's game progress or links to news and information), so long as the Licensed Content itself is not included within such fantasy gaming content modules.

3.1.7. No Microsoft Offering will display or otherwise make available in a single viewing page by end consumers all or materially all of the Licensed Content (other than Core Licensed Content) for any single league or sport. "***Core Licensed Content***" shall mean feeds that as of the Effective Date are known as F1, F3, F7 and F40.

3.1.8. Microsoft will not use the Licensed Content as part of any product or service that solely or predominantly contains sports data content, without additional content.

**3.2.** If Licensor notifies Microsoft of any unauthorized use of Licensed Content by any person then Microsoft will take reasonable steps to prevent or stop such unauthorized use.

**3.3.** OFFICIAL DATA

3.3.1. Microsoft agrees and acknowledges that the provision of Licensed Content is always subject to any arrangements (involving intellectual property and/or any other rights or otherwise), restrictions or prohibitions imposed by any Data Controller who has rights (including rights of venue access) in relation to any matches or events (collectively "***Controlled Events***"), whether or not Licensor or any other person is or becomes an Official Provider in relation to those Controlled Events and whether or not data for such Controlled Events is supplied (or expected to be supplied) as at the date of signature of this Agreement or at any other time during the Term. As at the date of this Agreement, Licensor is not aware of any Controlled Events other than for UK football. Licensor will notify Microsoft promptly in writing if it becomes aware of any Licensed Content becoming or potentially becoming Controlled Events.

3.3.2. Microsoft further agrees and acknowledges that at any time a Data Controller may enter into exclusive arrangements with one or more parties for the purpose of collecting and/or distributing data from Controlled Events (with each such party being an "***Official Provider***").

3.3.3. Without prejudice to Section 3.3.1, Microsoft's use of any Licensed Content relating to Controlled Events where Licensor (or a Licensor Affiliate) is or becomes an Official Provider is subject to Microsoft's compliance with such terms, conditions and restrictions imposed by the relevant Data Controller ("***Data Controller Terms***") which are notified in writing by Licensor to Microsoft (including in the schedules to this Agreement), and Licensor may suspend or discontinue the provision of such Licensed Content (and any related editorial) in the event of Microsoft's non-compliance with those terms, conditions or restrictions if Microsoft fails to comply with the Data Controller Terms which do not require web development, design or other technical or engineering work within five (5) business days'

after notice from Licensor. Should the Data Controller Terms require web development, design or other technical or engineering work by Microsoft for compliance, the parties shall negotiate in good faith a commercially reasonable timetable based on the scope of work required. Licensor shall endeavor to provide as much advance notice of any additional Data Controller Terms as possible. As at the date of this Agreement, the terms set out in Exhibit D will apply to Football Data (as defined therein). Licensor represents and warrants that those are the only applicable Data Controller Terms of which it is aware as of the Effective Date.

3.3.4. Without prejudice to Section 3.3.3, where a Data Controller enters into any arrangement described in Section 3.3.2 in relation to Controlled Events and: (a) Licensor is appointed as an Official Provider, then Licensor's provision of Licensed Content for Controlled Events may be subject to payment of additional fees and/or Microsoft's compliance with any necessary additional restrictions imposed by the Data Controller on the use of such Licensed Content by Microsoft. Licensor will notify Microsoft as soon as Licensor becomes aware of any such additional fees and/or restrictions. Licensor may suspend or discontinue the provision of such Licensed Content without compensation or liability to Microsoft in the event of Microsoft's noncompliance with any restrictions or nonpayment of additional fees following at least ten (10) business days' prior written notice of such noncompliance or nonpayment unless Licensor is required by a Data Controller to apply such suspension or discontinuation with immediate effect; or (b) Licensor is not appointed as an Official Provider, then notwithstanding any other provision of this Agreement, Licensor shall have the right to suspend or discontinue the provision of any Licensed Content in relation to such Controlled Events.

3.3.5. Microsoft acknowledges that it may need to obtain licenses from Data Controllers in order to be able to use the Official Provider Data as supplied by Licensor pursuant to this Agreement. Where this is the case, Microsoft shall be solely responsible at its own cost for obtaining all such Data Controller licenses. As at the date of this Agreement Licensor is not aware of any such licenses being required. Should Microsoft be unable or unwilling to procure such licenses, Licensor may suspend or discontinue the provision of the applicable Licensed Content.

## 4. MICROSOFT OFFERINGS; MARKETING; SALES

**4.1. Responsibility.** Microsoft shall be solely responsible for the Microsoft Offerings, including any advertising, sponsorship, promotion or other endorsement activity or content that appears with, or in connection with, the Licensed Content including but not limited to that which is displayed within or around any Licensed Content.

**4.2. Distribution.** Subject to the terms of this Agreement, Microsoft may set and determine (a) the terms of use or licensing of the Microsoft Offering (and any content contained in it); (b) any other Microsoft Offering circumstances of distribution including levels of effort, position, distribution channels, name, rights granted to Users, pricing, promotion, marketing, advertising, and when to cease sales and support; and (c) any other strategic sales or marketing decisions for the Microsoft Offering.

**4.3.** **Attribution**. Microsoft will display attributions provided by Licensor to Microsoft alongside Licensed Content as much as reasonably possible, subject to Microsoft guidelines, technical constraints and Microsoft's discretion in respect of the look-and-feel of Microsoft Offerings. Notwithstanding the foregoing, in the event mandatory individual attributions to third parties are contractually required, Licensor will inform Microsoft of such requirements and Microsoft will include the required attribution information (e.g. Football DataCo references) with the Licensed Content.

**4.4.** **Licensor Marks.** Any uses of Licensor Marks other than as provided under Section 4.3 will be subject to usage in accordance with Licensor's branding guidelines and the prior approval of Licensor (such approval not to be unreasonably withheld). Notwithstanding the foregoing, once usage of the Licensor Marks in a particular form and nature (e.g. for a specific Microsoft Offering or marketing campaign) has been approved by Licensor, Microsoft may continue to use the Licensor Marks in the same or substantially similar manner without obtaining additional consents from Licensor.

**4.5.** **Other Marks.** For the avoidance of doubt, other than as specified herein, this Agreement does not grant any license or other permission to Microsoft for the use of any trademarks (including league or competition names, club or team names or logos) or any right to use individual competitor names in any manner.

**6. PAYMENT**

**6.4** **Costs.** Licensor will obtain all rights and pay any third party fees necessary for Microsoft's use of the Licensed Content pursuant to this Agreement (e.g., third party statistical data, talent fees, residual payments), save for any fees that arise in the context of Section 3.3.5. Each party will pay its own costs to perform unless the Agreement provides otherwise.

**7 TERM AND TERMINATION**

**7.5** **Suspension.** Without prejudice to Microsoft's rights under this Agreement, Licensor shall be entitled to suspend or terminate the provision of the Licensed Content to Microsoft upon notification to Microsoft, without liability, where:

**7.5.1** Microsoft or Microsoft Affiliates are using, distributing or making available the Licensed Content other than in accordance with the license grants in Section 2 or the provisions of Section 3, following at least ten (10) business days' prior written notice of the suspension, provided that Licensor suspends only the Licensed Content to which the alleged violation relates, unless Licensor is required by a third party rights holder to apply such suspension or termination immediately and/or to suspend or terminate all Licensed Content controlled by that rights holder;

**7.5.2** Licensor reasonably believes that Licensor's continued supply and/or Microsoft's continued use of the Licensed Content (including any modifications or Derivatives Works created by Microsoft) constitutes alleged or actual infringement of a third party's rights, provided that Licensor notifies Microsoft in writing prior to suspending provision of Licensed Content, uses

reasonable endeavours to consult with Microsoft and suspends only the Licensed Content to which the potential infringement relates; or

**7.5.3** (i) Licensor reasonably believes that provision of the Licensed Content has become contrary to any applicable laws or regulations; and / or (ii) any accreditation, permission or other right granted to or held by Licensor or any Licensor Affiliates is suspended or terminated and the parties cannot, acting reasonably, agree on changes to the Licensed Content (or this Agreement) necessary to achieve compliance; provided in each case that Licensor notifies Microsoft in writing prior to suspending provision of Licensed Content, uses reasonable endeavours to consult with Microsoft and suspends only the Licensed Content to which the potential violation relates.

In the event of suspension or termination of Licensed Content under this Section 7.5, Microsoft will remove all such content from Microsoft Offerings as soon as reasonably practicable and in any event within five (5) business days after receiving such notice. If Microsoft fails to do so then Licensor will not be responsible (whether pursuant to Section 10.1 or otherwise) for any loss or damage suffered or incurred by Microsoft or any Microsoft Affiliate if such loss or damage would not have occurred but for Microsoft's failure to remove the Licensed Content or comply with such restrictions.

## 9 REPRESENTATIONS AND WARRANTIES

9.1.1 [Not applicable].

9.2 Licensor represents, warrants, and covenants that:

9.2.1 subject to Section 3.3, Licensor has full power and all rights to grant the licenses in this Agreement and it has not granted and will not grant any rights in the Licensed Content to any third party inconsistent with the rights granted to Microsoft to the extent that it would prevent Microsoft's from exercising the rights in the manner contemplated by this Agreement;

9.2.2 subject to Section 3.3, Licensor owns the Licensed Content or has licensed it from third parties with rights sufficient to grant Microsoft the licenses in this Agreement (without any payment by Microsoft to any third party and without the need for Microsoft to clear or obtain any additional rights to exercise these licenses);

9.2.3 subject to Section 3.3, the Licensed Content and Microsoft's exercise of the licenses set forth herein do not and will not violate any third party intellectual property rights (including copyright, patent, trade secret, trademark), or other third party proprietary, privacy, personal or publicity right;

## 10 INDEMNIFICATION

**10.2 Microsoft Indemnity.** Without prejudice to Section 10.1, Microsoft will defend, indemnify and hold Perform and its Indemnified Parties harmless from all expenses (including all judgments, settlements, attorneys' fees, and costs) related to any of the following ("***Perform Claim***"):

**10.2.1** Any third party claim arising from an actual or alleged breach by Microsoft of Section 2.1;

**10.2.2** Any claim by a third party arising from any modifications to the Licensed Content or Derivative Works created by Microsoft infringing the third party's rights (if such claim would not have arisen but for the modifications or the Derivative Works);

DocuSign Envelope ID: 27255B1E-CAE8-4FA9-BD28-6088FD68030B

**10.2.3** Any claim by a third party that the operation of any Microsoft Offering violates any third party intellectual property rights (including copyright, patent, trade secret, trademark), or other third party proprietary, privacy, personal or publicity right save to the extent such claim arises out of Microsoft's use of the Licensed Content in accordance with this Agreement;

**10.2.4** Any termination, suspension or loss by Licensor or any Licensor Affiliates of any accreditation, permission or other right to the extent that such termination, suspension or loss of right results from Microsoft's use of the Licensed Content other than in accordance with this Agreement save to the extent such claim arises out of Microsoft's use of the Licensed Content in accordance with this Agreement.

**10.4 Duty to correct Licensed Content.** If the Licensed Content (or any part of it) is held to be an infringement and the use of the Licensed Content, as contemplated by this Agreement, is enjoined or is threatened to be enjoined, Licensor will notify Microsoft and immediately, at Licensor's expense use reasonable endeavours to:

**10.4.1** Procure for Microsoft the right to continue use of all Licensed Content as licensed under this Agreement; or

**10.4.2** Replace or modify the applicable Licensed Content with a version of the Licensed Content that is non-infringing and that meets the Specifications in the applicable Exhibit to Microsoft's satisfaction.