UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

STATS LLC,

Plaintiffs,

-against-

MICROSOFT ONLINE, INC.,

Defendants.

-----------------------------------------------------------x

26-cv-5654 (PKC)

OPINION AND ORDER

CASTEL, U.S.D.J.

STATS LLC ("Stats") is a sports data and analytics company that collects, organizes, and analyzes sports data, then licenses it to companies and sports organizations. Microsoft Online, Inc. ("Microsoft") is a technology company that licensed Stats content for use in its products and services from 2015 to 2021. In 2021, Microsoft terminated the license agreement. Stats now brings a breach of contract claim for unlawful termination of the agreement. Microsoft moves to dismiss for failure to state a claim upon which relief can be granted.

The Court will grant the motion to dismiss.

BACKGROUND

Stats and Microsoft executed a Content License Agreement (the "Agreement") on May 15, 2014. (Compl't ¶ 23.) In return for an annual fee, Stats gave Microsoft a license to use hundreds of Stats's "data sets and series, covering dozens of professional and amateur domestic and international sports and competitions." (Id. ¶¶ 24-26.)

The Agreement had an initial term of three years, starting January 1, 2015. (Id. ¶ 27; ECF 1-1 at 7.) After three years, the Agreement would automatically renew for up to two one-year terms, unless Microsoft gave proper notice of its intent not to renew. (Compl't ¶ 28, ECF 1-1 at 7.) The Agreement defined each of these years as Year 1, Year 2, etc. (ECF 1-1 at 7.)

Section 6 of the Agreement included several provisions describing each party's termination rights. (Id. at 7-9.) Section 6.2.3(i) outlined one such termination right belonging to Microsoft:

> With effect at any time on or after the completion of Year 1, Microsoft shall have the right to terminate this Agreement (the "Early Termination Option") provided Microsoft: (a) is not in breach of this Agreement or no event has occurred that would constitute a breach of the Agreement, and (b) provides at least ninety (90) days written notice . . . to Licensor of Microsoft's desire to terminate (an "Early Termination Notice") and (c) pays to Licensor a fee (the "Early Termination Fee") as follows:

| When Exercised | Termination Fee Owed |
|---|---|
| During Year 1 (to take effect no earlier than first anniversary of the Commercial Availability Date) | $[] |
| During Year 2 | Lesser of (i) 50% of the unpaid portion of the Annual Fee for Year 2, or (ii) $[] |
| During Year 3 | Lesser of (i) 50% of the unpaid portion of the Annual Fee for Year 3, or (ii) $[] |
| During Year 4 or 5 | Lesser of (i) 50% of the unpaid portion of the Annual Fee for Year 4 or 5 (as applicable), or (ii) $[] |

(Id. at 8.)

The exact termination fee amounts are under seal. (ECF 29.) However, the fees declined exponentially over time, with each year's decrease larger than the year prior.[1] (ECF 1-1 at 8.)

Between 2016 and 2019, Microsoft and Stats amended the Agreement seven times. (Compl't ¶¶ 34, 64.) The First, Second, Fourth, Sixth, and Seventh Amendments granted Microsoft licenses to additional data and content in return for additional fees. (Id. ¶¶ 35-36, 38, 46, 64-65.) The Third Amendment extended the initial term of the Agreement to June 30, 2018, and created a consolidated fee schedule. (Id. ¶ 37.)

The Fifth Amendment introduced larger changes. (Id. ¶¶ 39-45.) First, it extended the initial term again, to run from July 1, 2018, to June 30, 2023, and defined these years as "Fifth Amendment Year One" through "Fifth Amendment Year Five." (Id. ¶ 40.) Second, the Fifth Amendment replaced the original fee structure with a new set of fee clauses aligned with the newly defined Fifth Amendment Years. (Id. ¶ 41.) Finally, the Fifth Amendment added three new termination rights to Section 6 of the Agreement, labeled 6.5-6.7 respectively. (Id. ¶ 44; ECF 1-1 at 41.) The Fifth Amendment did not amend or replace any of the already existing termination rights, including that in 6.2.3(i). (Compl't ¶ 44.) Instead, it stated that, "except as expressly amended by this Fifth Amendment, the Agreement (as amended by [earlier Amendments]) shall remain in full force and effect." (Id. ¶ 45; ECF 1-1 at 42.)

The parties performed under the Agreement until 2021. Then, on April 30, 2021, Microsoft sent a letter notifying Stats that it intended to terminate the Agreement "pursuant to Section 6.2.3," effective July 30, 2021. (Compl't ¶¶ 68-69.) This letter was sent during "Fifth Amendment Year Three" and what would have been Year 7 of the original Agreement.

[1] The Year 2 fee was equal to the Year 1 fee, i.e. a 0% decrease. The Year 3 fee was a 7% decrease from Year 2. The Year 4 and 5 fee was a 30% decrease from Year 3. (ECF 1-1 at 8.)

Microsoft argued its termination was valid because, after Year 5, the 6.2.3(i) termination right was still effective and the "Early Termination Fee" was $0. (Id. ¶ 72.) Stats argued the termination was invalid because the 6.2.3(i) termination right extinguished at the end of Year 5. (Id. ¶ 70.)

Microsoft ceased payments after July 30, 2021. (Id. ¶ 73.) The parties engaged in negotiations and mediation but have not resolved their dispute. (Id. ¶ 74.) On June 26, 2026, Stats initiated this action, asserting a claim for breach of contract. Microsoft has moved to dismiss for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). A court must disregard legal conclusions, which are not entitled to the presumption of truth, and instead examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 678-79. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013). However, a court is "not obliged to accept the allegations of the complaint as to how to construe such documents . . . ." Subaru Distribs. Corp. v. Subara of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of

law.' " Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

II. Stats Does Not Plausibly State a Claim for Breach of Contract.

The Agreement contains a New York choice of law provision. (ECF 1-1 at 12 ("The laws of the State of New York govern this Agreement without regard to conflict of law provisions.").) "New York law gives full effect to parties' choice-of-law provisions." Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996); N.Y. Gen. Oblig. Law § 5-1401. The Court will apply New York substantive law to the breach of contract claim.

To state a claim for breach of contract under New York law, the plaintiff must plausibly allege, "(1) the existence of a contract between itself and [the] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).

In its motion to dismiss, Microsoft argues that Stats has failed to plausibly allege the third prong—a breach of the contract. Microsoft claims that Section 6.2.3(i) was still in effect post-Year 5 and the associated termination fee was $0. Therefore, because Microsoft was not already in breach at the time, it gave proper notice, and the fee was $0, its termination of the Agreement was not a breach of the contract. Rather, it was a valid termination that met all the 6.2.3(i) requirements. Stats agrees that Microsoft was not already in breach and gave proper notice. (Compl't ¶¶ 67-68.) However, Stats argues that Section 6.2.3(i) was no longer in effect post-Year 5, and that the lack of any associated fees post-Year 5 is indicative of that. On this reading, Microsoft breached the contract when it terminated under Section 6.2.3(i). The outcome

turns on a question of contractual interpretation: Does Section 6.2.3(i) provide Microsoft a termination right after Year 5 with an associated fee of $0?

The Court concludes that the unambiguous, plain language of 6.2.3(i) provides Microsoft a termination right even after Year 5. The fee associated with that right after Year 5 is $0. Therefore, Microsoft did not breach the Agreement when it terminated under Section 6.2.3(i), and Stats has failed to plausibly allege breach of contract.

a. The Language of 6.2.3(i) Is Unambiguous.

A "threshold question," in contractual interpretation is "whether the terms of the contract are ambiguous." Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998). "Determining whether a contract is ambiguous 'is an issue of law for the courts to decide.' " Donohue v. Cuomo, 38 N.Y.3d 1, 13 (2022) (quoting Greenfield v. Philles Recs., Inc., 98 N.Y.2d 562, 569 (2002)). "[A] contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) (citing White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267 (2007)). "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." Donohue, 38 N.Y.3d at 12-13 (quoting W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, (1990)). "Extrinsic or parol evidence is admissible only if a court finds an ambiguity in the contract; such evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." Id. at 13 (quotations and citations omitted).

Both parties agree the Agreement is unambiguous. (ECF 19 at 13; ECF 25 at 11.) The parties present differing interpretations of Section 6.2.3(i), but neither party points to any ambiguity in the language of the Agreement. Stats offers extrinsic evidence in the event that the

Court finds ambiguity but does not affirmatively identify any possibly ambiguous language. (ECF 25 at 15-16.) "A contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms." Bank of N.Y. Mellon v. WMC Mortg., LLC, 136 A.D.3d 1, 9 (1st Dep't 2015) (quoting Bajraktari Mgmt. Corp. v. Am. Int'l Grp., Inc., 81 A.D.3d 432, 432 (1st Dep't 2011)); accord Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade, 98 A.D.3d 403, 406 (1st Dep't 2012) ("Mere assertion by one that contract language means something to him, . . . is not in and of itself enough to raise a triable issue of fact." (quoting Unisys Corp. v. Hercules Inc., 224 A.D.2d 365, 367 (1st Dep't 1996))).

The Court agrees with the parties. It can discern no ambiguity in the language of Section 6.2.3(i).

b. The Plain Language of 6.2.3(i) Allows Microsoft to Terminate After Year 5 for a Fee of $0.

Under New York law, "[c]onstruction of an unambiguous contract is a matter of law, and the intention of the parties may be gathered from the four corners of the instrument and should be enforced according to its terms." Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (2007). "A reading of the contract should not render any portion meaningless. Further, a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." Id. at 324-25 (quotations omitted). "In New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract." 159 MP Corp. v. Redbridge Bedford, LLC, 33 N.Y.3d 353, 356 (2019). Moreover, in those situations "[w]here a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the

parties specifically did not include." Donohue, 38 N.Y.3d at 12 (quotations omitted). "The best evidence of what parties to a written agreement intend is what they say in their writing." Greenfield, 98 N.Y.2d at 569 (quotations omitted). "Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied, the time to say so is at the bargaining table." Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC, 22 N.Y.3d 413, 424 (2013) (quotations omitted).

The plain language of Section 6.2.3(i) indicates that Microsoft retained its right to terminate the Agreement after Year 5. The clause begins by stating that it has "effect at any time on or after the completion of Year 1 . . . ." (ECF 1-1 at 8.) This language explicitly defines the time period in which the termination right was effective. If the parties wanted the clause to have an end date, they would have provided one, just as they provided a start date. See Quadrant Structured Prods. Co. v. Vertin, 23 N.Y.3d 549, 560 (2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission."). Instead, the plain language of the contract created a termination right that is effective "at any time" after Year 1. (Id.) "[A]ny time" after Year 1 includes Years 6 and 7.

The plain language of Section 6.2.3(i) also indicates that after Year 5, the "Early Termination Fee" was $0. The Agreement states that a fee will be due "as follows." (Id.) It then lists the fees applicable during Years 1-5. (Id.) Over the course of those years, the fee declines exponentially. (Id.) There is then no fee listed for Year 6 or 7. (Id.) Therefore, the plain language reflects a declining fee over time and eventually no fee due when the termination right is exercised after Year 5.

Stats argues that the parties can only have intended the 6.2.3(i) termination right to last five years because that was the full length of the original Agreement. When the parties first drafted the Agreement, this might have been true and might explain why the fees only extend to Year 5, or 2019. But, in 2018, Stats and Microsoft signed the Fifth Amendment, extending the initial term to 2023. (Id. at 38-42.) At that point, the parties could have added termination fees for the additional years or simply removed Section 6.2.3(i) from the Agreement. They elected to do neither. Instead, they left the termination right, effective "at any time," in the Agreement and assigned no fees for its exercise.

Stats next argues that the parties did not need to expressly amend or remove Section 6.2.3(i) because the Fifth Amendment did so impliedly. Stats points to Section 1 of the Fifth Amendment, which extended the Agreement to 2023 and defined "Fifth Amendment Year One" through "Fifth Amendment Year Five." (ECF 25 at 14; ECF 1-1 at 38.) Stats posits that a fixed term contract implies it is not at will, and, therefore, the extension of the Agreement for a fixed term eliminated the 6.2.3(i) termination right. (ECF 25 at 14.) The Court is not persuaded by this argument. First, Stats's reading asks the Court to conclude that the parties silently eliminated one of Microsoft's strongest termination rights, something a court should be "extremely reluctant" to do. See Utica Mut. Ins. Co. v. Clearwater Ins. Co., 906 F.3d 12, 24-25 (2d Cir. 2018) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." (quoting Glob. Reinsurance Corp. of Am. v. Century Indem. Co., 30 N.Y.3d 508, 518-19 (2017)).

More importantly, this argument defies the plain language of the Fifth Amendment. The Fifth Amendment generally states "[e]xcept as expressly amended by this Fifth Amendment, the Agreement (as amended by [prior Amendments]) shall remain in full force

and effect." (ECF 1-1 at 42 (emphasis added).) The Fifth Amendment also specifically left the original termination rights in place, even as it added to them. Section 4 of the Fifth Amendment says "Section 6 of the Agreement, Term and Termination shall be amended to include the following . . . ." (Id. at 41 (emphasis added).) The new termination rights are then labeled Section 6.5-7 so that they follow directly after the clauses found in the Agreement's original Section 6 rather than replace them. (Id.) This language indicates the parties intended to leave the original termination rights in full effect, despite the addition of new termination rights.

A comparison with the language in Section 3 of the Fifth Amendment makes that intent even clearer. Section 3 replaced the fee clauses found in Section 4.5 of the original Agreement. Section 3 of the Fifth Amendment reads "[a] new Section 4.5 is added to Exhibit B to the Agreement to read as follows . . . ." (Id. at 39 (emphasis added).) The parties then labeled the new clauses 4.5.1-3, indicating that they replaced the old Section 4.5 fee clauses. (Id. at 39-41.) The parties clearly knew how to replace sections of the original Agreement rather than simply add to them. See Dibrino v. Rockefeller Ctr. North, Inc., No. 103, 2025 WL 3670593, at *5 (N.Y. Dec. 18, 2025) ("[I]f the parties meant to extinguish the first two indemnity provisions in the master sub-contractor agreement . . ., they would have said so."). In sum, the plain language of the Fifth Amendment tells us that the parties' intent was to add to the existing termination rights, not replace them or impliedly eliminate them.

Finally, Stats argues that interpreting Section 6.2.3(i) as the Court does renders one of the new termination rights established in the Fifth Amendment superfluous. The Court disagrees. First, the new termination right, found under Section 6.6, and the termination right in 6.2.3(i) differ substantively. The 6.6 right allows Microsoft to terminate if it "ceases to offer sports statistical information which is substantially similar to the Licensed Content" and provides

90 days notice. (Id. at 41.) However, Section 6.6 requires the parties to "discuss in good faith the terms for the continued licensing of content for other portions of the Microsoft Offering, if any." (Id.) The 6.2.3(i) right allows Microsoft to terminate for any reason if there is no existing breach of the contract and Microsoft provides 90 days notice and pays the defined fee, in this case $0. (Id. at 8.) The absence of any requirement that the parties not be in breach and the requirement of good faith discussion set Section 6.6 apart from Section 6.2.3(i). Moreover, the Second Circuit has held, "as a general matter of contract interpretation, that provisions specifying grounds for termination or abrogation in an at-will contract are not necessarily surplusage." Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 976 F.3d 239, 246 (2d Cir. 2020) (citing Willcox & Gibbs Sewing-Mach. Co. v. Ewing, 141 U.S. 627, 636 (1891)). While the Agreement was not an at-will contract, the same logic applies as between broader and narrower termination rights. Finally, the plain text of the Fifth Amendment, as described above, tells us that the new termination rights were additive and not superfluous. (Id. at 41 ("Section 6 of the Agreement, Term and Termination shall be amended to include the following . . . .").) The Court will take the plain language of the contract at its word.

Microsoft's 6.2.3(i) termination right was in effect "at any time" after Year 1. There was no required fee after Year 5. Microsoft did not breach the Agreement when it terminated it under Section 6.2.3(i).

## CONCLUSION

Microsoft's motion to dismiss is GRANTED. The Clerk is respectfully directed to terminate the motion (ECF 18) and enter final judgement for Defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 5, 2026